ADDISON,
January,
1838.

ELIPHALET SWIFT *v.* ROYAL MOSELEY *et al.*

If the general owner of chattels part with the possession for a definite term, he cannot sustain trespass or trover for an injury done to the thing, during the continuance of the term.

But if the bailee apply the thing to a different use from that for which it was bailed, his interest is determined, and the bailor may sustain trover for the injury, against all concerned in the transaction. E. g. if the hirer of a chattel for a year, sell it during the year to one knowing his interest, the owner of the chattel may sustain trover against the purchaser.

TROVER, for two oxen, three cows and nine sheep.

Plea—Not guilty.

On the trial of the cause in the county court, it appeared in evidence, that, in the spring of 1835, the plaintiff leased a farm, lying in Bridport, (of which he was possessed in right of his wife,) together with the above mentioned cattle and sheep, to one Jirah Swift, for the term of one year. By the terms of said lease, the plaintiff and said Jirah Swift, were, at the end of the year, to divide the profits of the farm and the increase of the stock, equally between them, which stock was to remain upon the farm during the year, unless sold or taken off by the consent of the plaintiff and said Jirah Swift;—that some time in the month of August, 1835, the said Jirah Swift sold said cattle and sheep to the defendants, without the consent of the plaintiff, and absconded, and that the defendants, immediately after making the purchase, drove the cattle and sheep away from the farm. The plaintiff introduced testimony tending to prove, that the defendants knew that Jirah Swift had no right to dispose of the cattle and sheep, and that they purchased them much under their value. Upon this evidence, the county court decided, that this action could not be sustained, as the plaintiff brought the suit previous to the termination of said lease, by the terms of which he had parted with his right of possession of the property in question, during its continuance, and rendered a judgment for the defendants, to which decision the plaintiff excepted.

*Briggs & Barber*, for plaintiff.

1. It is a familiar and well settled principle, that the general owner of chattels, bailed for a particular purpose, may maintain trover against the person who has transferred them,

Addison,
January,
1838.

Swift
v.
Moseley et al.

not in market overt, in contravention of such purpose. *Wilkinson* v. *King*, 2 Camp. 335.　2 Starkie, 311.

2. The lease, by which the right of possession of the chattels in question was vested in Jirah Swift, during the term, was determined by his absconding and thus abandoning the lease.

A lessee of premises, by surrendering his term before the expiration of it, or by giving notice to his lessor that he is about to leave and abandon the possession of the premises, may determine the lease with the lessor's consent.　*Collins & Harvey* v. *Gibson and Sargeant*, 5 Vt. R. 243.

3. The sale of the property, by Jirah Swift to the defendants, was in violation of his contract with the plaintiff, and determined his special property.　*Farrant* v. *Thompson*, 5 B. & A. 826.

The sale was in fraud of the plaintiff's rights, and the case shows that the defendants had knowledge of what those rights were.　Consequently, in making the purchase, they aided in the fraud, and acquired no title to the property in question. And this view of the case is sustained by the case of *Bigelow* v. *Huntley*, 8 Vt. R. 151.

*C. Linsley*, for defendants.

It is indispensable in this action that the possession or the right of possession should be in the plaintiff, at the time of commencing the suit.　*Gordon* v. *Harper*, 7 T. R. 12. *Soper* v. *Sumner et al.* 5 Vt. R. 274.

The opinion of the Court was delivered by

Redfield, J.—It seems to be well settled, that the plaintiff, in trespass *de bonis asportatis*, or trover, in order to maintain the action, must have had, at the time of the injury complained of, either the actual custody of the thing injured or taken, or a property in it, either general or special, with the right to immediate possession.　If he had the actual custody of the thing, even wrongfully, he may maintain the action against every one, whose right is not superior to his. Perhaps a mere servant could not be said to have any such custody.　His possession is that of the master.　The general owner of a chattel may always maintain the action, unless he have parted with the possession, for a " definite term." *Ward* v. *Macauley*, 4 T. R. 489.　Lord *Kenyon* in that case intimates an opinion, that trover will lie, but in *Gordon* v.

*Harper*, 7 T. R. 12, it is expressly held, that case is the only remedy for an injury done to the thing bailed, during the continuance of the bailment.

In the present case it is contended, that the act of the lessee or bailee, in selling to the defendants, did, *ipso facto*, determine his right, and revive the right of the plaintiff to immediate possession. If so, the plaintiff may maintain this action. It may be well to inquire what acts will determine a bailment of this character.

It is certain the act of a mere stranger will not operate to revive the plaintiff's right to immediate possession. Any misuse or abuse of the thing bailed, in the particular use for which the bailment was made, will not enable the general owner to maintain trespass or trover against the bailee. His only remedy is case. But if the thing be put to a *different* use from that for which it was bailed, by the consent of the bailee, we think the bailor may maintain trespass or trover.

It has been long settled that if the bailee kill or destroy the thing bailed, trespass or trover will lie. Coke's In. a. 53. It was early held, too, that the interest of the tenant in standing trees was so far determined by their being severed from the freehold, that the landlord might maintain trespass.

In the case of *Farrant* v. *Thompson*, 5 Barn. & Ald. 826, found in the 7th Com. Law R. it was held that machinery, leased and by the lessee severed from the freehold, became *instanter* re-vested in the lessor, and he might maintain trover even during the continuance of the term. The case is expressly put by the court upon the ground, that the lessee, by his wrongful act, forfeits his right, and thus " puts an end to his qualified possession." If so in that case, much more in this, where the bailee sells the property. The same doctrine here decided is held in the case of *Sanborn* v. *Coleman*, 6 N. H. R. 14.

The judgment of the County Court is reversed, and a new trial granted.