## FRANKLIN FALES *v*. HIRAM ROBERTS.

*Tender. Conditional Sale. Attachment. Statute.*

Where an article of personal property is purchased on time and upon condition that it is to remain the property of the vendor until paid for, if a creditor of the vendee attaches said article as the property of the vendee before fully paid for, he must pay or tender to the vendor, his agent or attorney, the amount unpaid within ten days from the time he has notice thereof, though the ten days expire before the unpaid purchase money becomes due by the contract of sale.

The fact that there was a dispute as to the amount of purchase money due the vendor did not in this instance interfere with the right of the attaching creditor to make the tender. The case of *Rowan* v. *Union Army Co. et al.*, 36 Vt. 124, referred to and distinguished from this case upon this point.

REPLEVIN for one two-horse stage coach. The plaintiff's writ was dated the 6th of July, 1864. Plea, *non cepit*, with a notice of special matter. Trial by the court at the September Term, 1865, KELLOGG, J., presiding, by the consent of the parties.

It appeared from the testimony on trial that, on the 25th of March, 1864, the plaintiff, who resided in Rochester, in the county of Windsor, was the owner of the stage coach referred to and described in his declaration, and that, on the same day, at Rochester, he sold the said stage coach to one Isaac H. Gray, who then resided at Brandon, by a conditional sale, and delivered the same to the said Gray, and that, on this occasion, Gray executed and delivered to the plaintiff a receipt in writing of which the following is a copy, viz:

" This day received of F. Fales one stage coach, for which I agree to pay him thirty-five dollars in three months, and the coach to be and remain the said Fales' until paid for.

(Signed,)       I. H. GRAY.

Rochester, March 25th, 1864."

It further appeared from the testimony of the plaintiff and Gray, that the terms of the conditional sale were that the price of the stage coach in the sale should be sixty dollars, and that, on the occasion of the sale, Gray told the plaintiff that he had a sleigh which he wished to let the plaintiff have as part payment for the stage coach, if the sleigh should be satisfactory to the plaintiff. At the time of the making of the sale, the sleigh was at the inn of Gray in Brandon, and had never been seen by the plaintiff. The plaintiff

agreed to allow to Gray twenty-five dollars for the sleigh if it was equal to the recommendation which Gray gave of it; but, if it did not suit the plaintiff when it was delivered to him, it was to be optional with him whether he would accept it or not, and Gray was to take the sleigh back, and pay the plaintiff the sum of twenty-five dollars, which, in the bargain for the stage coach, was to be allowed for the sleigh, within the same time within which the remainder of the price of the stage coach was to be paid; and the sleigh was to be delivered by Gray to the plaintiff at Rochester; and Gray was to pay to the plaintiff thirty-five dollars in addition to the sleigh within three months from that day, (the 25th of March, 1864,) and the stage coach was to remain the property of the plaintiff until the agreed price of it was fully paid.  Within two or three weeks after the making of the sale, Gray sent the sleigh to the plaintiff at Rochester, and the plaintiff declined to accept the same on the ground that it did not correspond with Gray's representations in respect to it; and the plaintiff about one week after the sleigh was delivered to him, told Gray that he should not accept it.  The plaintiff gave this notice to Gray three or four days before the stage coach was attached by the defendant on the writ in favor of the firm of Barrett & Son against Gray, as hereinafter mentioned.  The sleigh remained in the plaintiff's possession until the latter part of December, 1864, when it was taken away by Gray.

It further appeared that, about the 1st of April, 1864, one James Hastings purchased of the firm of Barrett & Son, a debt or claim on a judgment in their favor against Gray, and, on the 4th of May, 1864, procured a writ of attachment in favor of Barrett & Son against Gray, in an action of debt on the said judgment, and, on the same day, delivered the said writ to the defendant, a deputy sheriff, to be served, and he, on the same day, made service of said writ by attaching the said stage coach as the property of Gray, "subject to a lien for the original purchase of Fales," the plaintiff.  Judgment was duly rendered in the said action, on the default of Gray to appear and answer, in favor of Barrett & Son against Gray, for $36.28 damages, and for costs $4.06.  Execution was duly taken out, but was returned unsatisfied, the said stage coach having been replevied from the defendant on the 9th of July, 1864, which is this action.

It further appeared that, on the 25th day of June, 1864, Hastings, as the owner of the debt in favor of Barrett & Son, caused to be tendered to the plaintiff in this action thirty-six dollars for or on account of the lien or claim which the plaintiff had on the said stage coach; and that the plaintiff refused to accept the same; and the said tender was kept good.

It further appeared that the plaintiff informed the defendant that he (the plaintiff,) had a claim on the said stage coach for sixty dollars, on the 6th day of May, 1864, and within two days after the stage coach was attached by the defendant. It also appeared that Hastings and one Parmenter saw the plaintiff two or three days before the stage coach was attached by the defendant, and that at this time the plaintiff told Parmenter, (but not in the presence of Hastings,) in reply to an inquiry in respect to the amount of his claim on the said stage coach, that the only claim which he, (the plaintiff,) had thereon, was the contract of Gray for the payment of thirty-five dollars in three months, and that if Parmenter would pay him that sum he could have the contract, and have the matter in his own way. It further appeared that Hastings was informed of this conversation, and that he procured the said writ of attachment in favor of Barrett & Son against Gray, and caused the stage coach to be attached thereon by the defendant as deputy sheriff in reliance upon the statement so made by the plaintiff, in respect to the amount of his lien or claim on the stage coach to Parmenter.

The court decided that the said receipt should be treated as the only contract of the parties in respect to the subject matter of the said conditional sale of the stage coach; and that the said tender was sufficient in amount, and was seasonably made; and that the defendant was entitled to a judgment in his favor, and to a return of the property, and rendered judgment accordingly, and that the defendant recover against the plaintiff one cent for his damages, (all claim for damages beyond that sum being waived by the defendant,) and also his costs. To the said decision of the court in respect to the character and effect of the receipt, and also in respect to the making of the tender, and in respect to the defendant being entitled to a judgment, and to the judgment so rendered by the court in favor of the defendant, the plaintiff excepted.

33

*J. Q. Hawkins* añd *Prout & Dunton*, for the plaintiff, maintained, (1,) that the amount tendered was insufficient ; (2,) that the tender was not made in season.   G. S., p. 203, § 28 ; *Hefflin* v. *Bell*, 30 Vt. 134.

*Nicholson & Ormsbee*, for the defendant.

The tender was seasonably made.   The statute, G. S., p. 203, § 28, authorizes the attaching creditor to make tender of the unpaid purchase money "within ten days after notice of the amount thereof remaining unpaid."   Ths words "*amount thereof remaining unpaid,*" cannot, by fair construction, be applied to a debt not yet due.   It cannot with propriety be said that there is any thing *unpaid*, where *nothing is yet due.*   By the express terms of the written contract the $35.00 became due in three months from the 25th of March, 1864, viz : on the 25th of June, 1864.   The tender was made on that day. It could not with propriety have been made earlier.   Had it been made at an earlier date it would have been wholly inoperative.   No obligation would have existed on the part of Fales to receive it. He might with propriety have repudiated it as premature in point of time ; and a new tender would be indispensable when the claim matured.   The law never requires the performance of an act which, when performed, is wholly useless or inoperative.

The opinion of the court was delivered by

WILSON, J.   This is an action of replevin, and the only question important to consider is whether the tender was seasonably made ; and the decision of this question depends upon the construction the court give to the statute authorizing the attachment of the property by the defendant.   No question is made but that the interest of Gray in the property, at the time of the attachment, was that of a vendee under a contract of sale where payment of the purchase money is made a condition precedent to the transfer of the title.   The case shows that the property was attached by the defendant as deputy sheriff on the 4th day of May, 1864 ; that the defendant on the 6th day of May, 1864, was informed and notified by the plaintiff of his claim on the property, and the defendant on the 25th day of June, 1864, caused to be tendered to the plaintiff in this action thirty-six dollars, for or on account of the claim of the plaintiff, and he refused to receive it.   Independent of the statute, property thus situated

could not be lawfully attached, and under the statute the right of the attaching creditor to hold the property depends upon a substantial if not strict compliance with its provisions. The statute provides that any creditor of the vendee may attach the property, or levy his execution upon it, and upon payment or tender of payment of such unpaid purchase money to the vendor his agent or attorney within ten days after notice thereof of the amount remaining unpaid, may hold the property discharged from the claim of such vendor thereon.

The contract between Fales and Gray was that the latter should make payment within three months from the 25th day of March, 1864, and the defendant claims, and such was the ruling of the county court, that the attaching creditor was, in respect to the time of payment, substituted to the rights of the vendee.

A brief consideration of the nature and object of conditional sales, the provisions of the statute authorizing the attachment of the vendee's interest in the property, and of the evident intention of the legislature in the provisions made to protect the rights of the vendor, will afford reasonable and safe rules of interpretation. In case of such sale the payment of the purchase money is made a condition precedent to the transfer of the title. The property under such sale ordinarily passes into the possession of the vendee for his use until the time of payment arrives. The vendor seldom has any security for payment except his lien upon the property. It is understood, and the vendor expects, that the vendee will use and take such reasonable care of the property as would be required of a bailee for reward. The vendor is supposed to have personal knowledge of the customary usage of like property by the vendee, and that in his hands it would not be likely to deteriorate in value beyond what would naturally result from careful usage. To a considerable extent such sale is founded upon personal confidence and trust arising from the vendor's knowledge of the probable safety of the property in the hands of the vendee. It is a confidence and trust which the vendor might not be willing to repose in the attaching creditor ; and it is a trust which the vendee has no power to transfer until the condition of the sale is complied with. Hence the statute provides that payment or tender of payment of the unpaid purchase money, shall be made within ten days after notice of the amount remaining unpaid.

It will be observed that the time fixed in the statute, within which the attaching creditor is required to make payment, is less than the time within which he would be authorized by law to dispose of the property by sale, either upon the writ or execution. We think it apparent, that the legislature, while providing a remedy for the creditors of the vendee, which prior to the statute did not exist, intended to protect the rights of the vendor, and not allow the property, before such payment, to pass permanently into the hands of the attaching creditor, nor into the hands of any person who should purchase it at auction sale, who might be a transient and irresponsible person. By the attachment in such case the property is usually taken out of the possession of the vendee, and, if he had no agency in the attachment, his relation with the vendor in respect to the property, and his responsibility for the property, are discharged. Other and different relations, rights and liabilities are created by the attachment. These relations, rights and liabilities do not result from any contract of the parties ; they exist by force of the statute, and its provisions must be complied with in order to render the attachment available. We are entirely agreed that the plaintiff was entitled to payment or tender of payment of his claim on the property, or the property itself, within ten days after notice of the amount remaining unpaid was given to the attaching creditor.

To illustrate the correctness of this position, let us suppose the property to have been sold on a credit of one year, and that the attaching creditor is insolvent, resides without this state, or moves from the state previous to the time of payment, and in the mean time the property is destroyed or carried beyond the reach of the vendor ; now under any other rule than the one herein laid down, the probable result would be a total loss to the vendor.

It is urged by the defendant that the plaintiff could not have been compelled to receive payment until it was due by the terms of the contract, and there being controversy as to the amount remaining unpaid, he was not required to make payment or tender of payment within the time named in the statute.

The rights of both vendor and attaching creditor in such case are regulated by the statute. It requires payment to be made or tendered within a given time, without regard to the time stipulated in the con-

tract, and if the tender is sufficient in amount, and made within the time limited by the statute, it is wholly immaterial to the rights of the creditor whether the vendor accepts it. The statute giving the right to attach the property, also gives the right and imposes the obligation to make the tender, and we are not able to discover how there could exist any more practical difficulty in making a tender in this case than might exist in making a tender in any other case where there is dispute as to the amount remaining unpaid. In *Rowan* v. *Union Arms Co. et al.*, 36 Vt. 135, the court held, under the peculiar circumstances of the case, that the intervention of a court of equity was necessary in order to determine the sum remaining due, so that payment or tender of payment could be made, but the rule adopted in that case is not applicable to this case.

The views of the court above expressed render it unnecessary to consider the other exceptions taken to the ruling of the county court.

The judgment of the county court is reversed, and the case will be remanded to the county court for assessment of the damages, unless the plaintiff will consent to nominal damages. Judgment for the plaintiff for nominal damages and his costs.