EDWARD ALVORD v. AARON K. DAVENPORT.

*Trover.    Conversion.    Innkeeper.    Bailment.*

There is no general rule of universal application as to the right of a bailee to use property while in his keeping, but generally cases must be governed by their own particular circumstances in the absence of any contract for the use.

Where, soon after a horse and wagon and other articles were left with an inn-keeper to be kept for a few days, he had good reason to believe that the person leaving the horse, &c., did not own it and had abandoned it and was acting in bad faith towards the owner, and the inn-keeper did not know who, or where the owner was, and the owner, as the inn-keeper had reason to believe, did not know where the property was, it was *held* that the inn-keeper had the right to use the property moderately and prudently to the extent of compensating him for his charges for keeping; and such use, being lawful, was not a conversion.

But having used the property sufficiently for this purpose, a demand by the owner and refusal by the inn-keeper, was a conversion which sustains the action of trover; and the question of the inn-keeper's lien upon the property, for charges incurred in respect to it, may be tried in defense of this action.

TROVER for a gray mare and other articles as per declaration. Plea, not guilty, and trial by the court, December term, 1869, BARRETT, J., presiding.

From the evidence the court find the following facts :

The plaintiff, a livery stable keeper in Springfield, Mass., on the first day of March, 1864, let to Pierce the property in question, to go to North Amherst, Mass., to visit his parents, to be gone six days—and also a buggy. On the fourth day of March, a young man, corresponding to the description of said Pierce, drove up to defendant's house in Chester, Vt., purporting to be a hotel, and had his team put up and fed, and himself had dinner —not giving his name. After dinner, he told the defendant he was going to Burlington, Vt., and should be back in eight or ten days, and wished to leave the team at defendant's, and directed to have it taken care of and fed half a bushel of oats daily, and when he came back he would pay for his dinner and for the keeping of the team, and procured the defendant to carry him to the depot. That man has never been seen or heard from by the defendant since.

After the expiration of the time for which the team was hired of the plaintiff, he, the plaintiff, caused notice of the loss of the property, giving a particular description of it and of Pierce, to be published in the *Springfield Daily Republican* for some two weeks, and handbills to be sent in all directions ; but

he got no clue to the property till about the middle of April, 1869, when, hearing that such property was in the hands of the defendant, he went to Chester, arriving in the evening; and the same evening he called on the defendant, and found and identified the property as being that which he had let to said Pierce. The defendant was satisfied that the property belonged to the plaintiff. The plaintiff then informed the defendant that he wished to take the property back home with him the next day, by the train that would leave about noon. The defendant expressed a willingness to give it up, on condition that the plaintiff would pay him for the keeping of it. The plaintiff asked him how much he claimed; the defendant did not tell him. The next morning the plaintiff called on the defendant again, and repeated his wish to take the property, and the defendant expressed a willingness to give it up on the same condition as the night before. The plaintiff repeated his inquiries how much he claimed. The defendant declined to name any sum, but said that he should not give it up unless he was paid for the keeping. The plaintiff then made an explicit demand for the property, but the defendant refused to give up to him the property unless plaintiff would pay his claim for keeping, but still declined to state how much he claimed, saying that he wanted to see some man whom he expected on the train, and some man in Springfield, before he was prepared to state the amount of his claim. The plaintiff gave the defendant throughout to understand that it was necessary for him to leave for home by the train about noon, that day, and he did leave by that train, the defendant retaining the property. Thereupon this suit was brought.

The court further find that, from the circumstances attending and ensuing upon the leaving of the team as aforesaid, the defendant had good reason to believe, and in the exercise of ordinary judgment and reasonable discretion, he would have been satisfied, within two or three weeks after the property came there, that it did not belong to the person who took it there and left it, and that that person, in so doing, was acting falsely and wrongfully towards the true owner.

The defendant, after the property had been thus left, made no concealment of the manner in which it came and was left there, and told persons from time to time, who went to his barn where the property was, about it; and among them a man from Holyoke, Mass., and also a man from Fitchburg, Mass., who was looking after lost property of a similar kind; but the defendant did not advertise the property as being thus in his possession, by publication in newspapers, or by handbills, or by any written notice.

For a few days he fed the horse as directed, and then put it on

ordinary feed ; and for a while he used it only for exercise need-ful for the good of the horse.  After about a year he used it be-yond mere needful exercise, and for his ordinary service, it being the only horse he kept, down to the time the plaintiff went for it; and he also used the other articles of said property in the same way in connection with the horse ; and in the course of the time those articles were a good deal impaired by such use.   The horse was used prudently and not injured by the defendant.   But the court find that the use of the horse and the other articles was a full equivalent for the trouble and expense of keeping the prop-erty during the whole time it was in the defendant's possession down to the bringing of this suit, and a just compensation there-for.

The court found other facts in regard to the defendant's license as an inn-keeper, not material to be stated.   The court also found that the defendant had consulted with some lawyers as to the proper course to take, but what their advice was did not appear, except that the defendant testified that he stated the facts to them, and they told him there was no law that required him to adver-tise the property.

The court rendered judgment for the plaintiff for $235.04. The defendant excepted.

*George L. Fletcher*, for the defendant.

*L. Adams*, for the plaintiff.

The opinion of the court was delivered by

PECK, J.   It is claimed by the plaintiff's counsel that the use of the horse and other articles by the defendant was a conversion for which the defendant is liable in this action.   On the part of the defense the claim is that the defendant had a right to use the property to the extent he did use it.   If this proposition of the defendant's counsel is correct, the use of the property by the de-fendant is not in law a conversion.   It is not necessary, in order to entitle the plaintiff to retain the judgment he recovered in the county court, to hold that the use of the property was a conver-sion, in the view we take of the demand and refusal.   As to the right of a bailee to use the property while in his keeping, al-

though there are some general rules on the subject, yet no general rule of universal application can be laid down, but generally cases must be governed by their own particular circumstances, in the absence of any contract on the subject of the use. The authorities seem to agree that the right of the bailee to use the property, in the absence of express contract on the subject, depends on the circumstances of the case, the character and purpose of the bailment, the nature of the property in connection with the other attending circumstances. One test or principle applicable to the subject is, to consider whether from the circumstances the consent of the owner to the use may fairly be presumed. It is said in the books that if the use would be for the benefit of the property, the assent of the owner should generally be presumed, but not so if the use would be injurious, or perilous. It would seem that if the use would be indifferent, the right to use should be determined the way the other circumstances incline. In some cases the assent of the owner may be inferred as a fact from the circumstances; but that is not in all cases necessary; for in some cases the presumed assent is a mere fiction, and the question as to the right of the bailee to use the property becomes a question of law upon a given state of facts, without reference to any actual assent of the owner in fact. It is generally not only the right, but the duty, of the bailee to use the property so far as necessary to its preservation. To this extent the assent of the owner may be presumed—as in case of the milking of a milch cow; and in case of a horse, exercise and moderate use to the extent necessary to the health and vigor of the animal. Again it is laid down by the elementary writers, that the right to use the property may depend on whether it is property of a nature that requires expense to keep it; and if so, the bailee may use it reasonably to compensate him for the charge of keeping. This fact however would not necessarily determine the right without reference to the character of the bailment and other circumstances. In the present case no one of the above considerations alone can determine the right, but it must be determined by all the circumstances combined. The question then arises, what are the rights of the parties in this respect under the circumstances of this case. Soon after the horse and other arti-

cles were left with the defendant by Pierce, the defendant had
good reason to believe that Pierce did not own the property and
that he had abandoned it, and that he was acting in bad faith to-
ward the owner.   The defendant, the bailee, did not know who or
where the owner was ; and the owner, as the defendant must have
had good reason to know, was ignorant as to where the property
was ; so that there was no opportunity for communication between
the parties to obtain or give instructions, or for the defendant to
apply to the owner for payment of his charges for keeping.   Even
if under the circumstances the defendant would have had a claim
for the keeping, for which the owner, the plaintiff, would be *per-
sonally* liable, still the defendant did not know when, if ever, he
would be discovered ; so that, apparently, during the time of the
bailment, the defendant had no available means of compensating
himself for the keeping, except the horse and other articles of
property in question.   For aught the defendant knew, the property
was his only debtor for the expense he was incurring ; and had the
horse died in the mean time after a large bill had accrued, this rem-
edy would have been lost.   Under such circumstances, the defen-
dant had a right to use the property moderately and prudently, to
the extent of compensating him for his charges, in the manner that
the case shows he did use it.   Whether the actual assent of the
plaintiff in the mean time is presumed or not, it is fairly to be pre-
sumed that if the plaintiff had known the facts he would have as-
sented.   The use of the property has manifestly benefited the
plaintiff, for, but for that, the expense of keeping for the four
years would probably have exhausted the whole property.   The
defendant's use of the property being lawful, it is no conversion.

In this the court agree with the defendant's counsel.

But the demand of the property by the plaintiff and the refusal
by the defendant was a conversion which sustains the action and
entitles the plaintiff to recover.   The defendant having lawfully
used the property, must account for the use upon his charges for
trouble and expense of keeping the property ; and the court hav-
ing found that it is a full equivalent, the defendant had no lien
upon the property.   The plaintiff, therefore, at the time of the
demand, had a right to the possession which was wrongfully with-

held by the defendant. It is urged by the defendant's counsel that the action of trover is not the proper action ; that the expense of keeping, and the question as to the use of the property, cannot be tried in an action of tort ; that the action should be an action of contract. But the action of trover is the proper action for the owner of personal property, who is entitled to possession, to bring against one who, on demand of the owner, wrongfully refuses to surrender it. This is the plaintiff's case. The defendant cannot defeat the suit, or turn the plaintiff over to a different form of action, by setting up a lien upon the property which has no foundation in fact. If a lien is asserted and attempted to be proved in defense by virtue of a debt, claim, or charge incurred in respect to the property, it is competent for the plaintiff to show that no such lien ever existed ; or that, if it once existed, it had been extinguished ; and it is no objection to such proof that it involves the inquiry whether such debt, claim, or charge has been paid or otherwise satisfied. Such issues may properly, and often do, arise collaterally in actions of tort, and especially in the action of trover. Nothing is more common than to try questions of lien in defense of the action of trover. We have no occasion to discuss the question whether the defendant was entitled to all the rights that a regularly licensed inn-keeper would have had in regard to a lien upon the property, because, conceding that he was thus entitled, there is no error in the decision of the county court of which the defendant has a right to complain.

Judgment affirmed.