·CARROLL S. PAGE, Surviving Partner, *v.* FRANK S. EDWARDS.

*Evidence. Conditienal sale. Waterwheel when chattel. Waiver of lien. Statute of limitations.*

1. L. was the owner of a saw-mill and the plaintiff's firm furnished him money with which to operate it. L. bought the logs in the name of the plaintiff's firm, and the lumber was sold and the collections made by that firm. The plaintiff's firm also bought for and delivered to L. a waterwheel and other machinery which L. put into and used in connection with said mill. The plaintiff's desceased partner managed the business and there was no direct evidence to show the terms under which L. took and held this machinery. *Held,* that the fact that the plaintiff's firm charged L. with the purchase price upon its books and that L. credited the plaintiff's firm with the purchase upon his books tended to show a sale, and that the circumstances of the case, together with the plaintiff's evidence that his firm took special pains to keep title to all the property which they bought for L., warranted a finding by the referee that this was a conditional sale.

2. A waterwheel and shafting attached to a lumber mill in the usual manner retain their character as chattels in favor of a conditional vendor as against a prior mortgage.

3. And this is so although old machinery covered by the mortgage was taken out to make room for the new, and although the waterwheel could not be removed without destroying the penstock.

4. A conditional vendor does not waive his lien by taking a mortgage of the same and other property as "further security".

5. Nor is the foreclosure of a mortgage which secured that and other indebtedness a satisfaction of the lien where it appears that the proceeds of the foreclosure did not liquidate the entire indebtedness.

6. The statute of limitations does not run against a conditional vendor until there is an adverse possession by the vendee.

Trover for the conversion of a waterwheel and certain machinery. Heard upon the report of a referee at the April

term, 1891, Lamoille county, Start, J., presiding. Judgment for the plaintiff. The defendant excepts.

In 1879 one Lamplough gave the defendent a mortgage of a saw-mill. In 1886 the defendant foreclosed this mortgage and obtained a decree which became absolute December 11, 1887. The plaintiff and his deceased partner were made parties defendant to that suit. In 1886 the defendant took possession under his mortgage and afterwards continued in such possession.

When the defendant took possession the waterwheel and machinery sued for were attached to and being used in connection with said mill. The writ in this cause was served April 9,. 1888. Before making service the officer demanded the property of the defendant, who refused to surrender it.

In reference to the circumstances under which this property was put into the mill, and the plaintiff's title thereto, the referee reported as follows:

" After the said Jonathan Lamplough made the purchase of said sawmill and other property, he entered into an arrangement with the firm of Page & Noyes, aforesaid, to stock his mill with logs. Said firm furnished money to buy the logs, the title remaining in said firm; and the said Lamplough purchased the logs in their name, sawed the lumber and delivered it to them;. said firm kept an account of such transactions, charging him with the money advanced and giving him credit for the lumber received, it being understood that Lamplough was to have the benefit of the business, that is, all above advances and interest on the same, and one dollar a thousand on the lumber for selling, guaranteeing the sales and collections and to make the firm of Page & Noyes safe, the title to all logs and lumber purchased with their advances was to remain in the firm until said firm should be fully paid; this arrangement continued up to the time of the said Jonathan Lamplough's decease.

In the spring of 1881 the said Lamplough was desirous of improving his saw mill. His waterwheel was old and he wanted one that would give him more power, and if this change was made it would require new shafting, gearing, pulleys, boxes, belts and other things to put the mill in good running order. He applied to the firm of Page & Noyes for advances for this purpose. Said firm supplied such things as he requested, pur-

chasing the same in its own name and paying for the same, and sent such items to the said Lamplough, who put the same into his saw-mill after removing such machinery as he desired and making suitable changes to adapt the mill to the new parts. It did not appear what Lamplough did with the old waterwheel and machinery removed from the mill. The amount of such advances or items was $670.23.

From the course of business between these parties, the pecuniary responsibility of said Lamplough at the time and the way and manner the items mentioned in said four bills were purchased, the referee finds that it was understood when said property was delivered to said Lamplough by the firm of Page & Noyes, that so far as it could lawfully be done, the property mentioned in said four bills was still the property of the firm of Page & Noyes, that said Lamplough was to take it and use it in the way and manner he did, and said firm would let him have it when he could pay for it; to further secure the firm of Page & Noyes against loss, on the the 30th day of July, A. D. 1881, the said Jonathan Lamplough and his wife, Andelucia A. Lamplough, executed the said firm a mortgage deed, covering all the property before mentioned in their mortgage deed to the defendant. Also one other hundred acre lot of land situated in what was formerly Sterling, and all the machinery in the saw-mill described in said mortgage deed as follows: " Also, all the machinery of every kind and description in the saw-mill aforesaid, consisting of a Leffel water-wheel, a Lane board mill, gearing, shafting, belting, fixtures and machines and machinery of every kind in or about said mill and all the privileges thereto." The condition in said mortgage deed was as follows: " Provided, however, and the condition of this deed is such, that if we shall well and truly pay or cause to be paid to the said Page & Noyes the sum of about fourteen hundred dollars, which the said Jonathan Lamplough owes the said Page & Noyes on book and all sums which he may hereafter owe the said Page & Noyes either on book or note or in any other manner, then this deed shall be void, otherwise of full force and virtue."

"The amount of the four bills hereinbefore referred to were entered on the books of Page & Noyes to the debit of Lamplough, in the same manner and in the same account as the cash advanced with which to purchase logs. Lamplough also kept a book account of his dealings with Page & Noyes, in which he credited to them the machinery, &c., mentioned in the exhibits and for which the plaintiff claims to recover in this suit."

After the above finding had been made by the referee, counsel for the defendant submitted the following request:

"The counsel for the defendant objects to the following finding by the referee: From the course of business between these parties, the pecuniary responsibility of said Lamplough at that time, and the way and manner the items mentioned in said four bills were purchased, the referee finds that it was understood when said property was delivered to said Lamplough by the firm of Page & Noyes, that said Lamplough was to take it and use it in the way and manner he did, and said firm would let him have it when he could pay for it," as unwarranted by the evidence, and asks to have the same struck from the report, but in case the same is allowed to remain, asks that the referee further find as follows: "The plaintiff, Page, was the only witness before the referee who testified in respect to the contract between Lamplough and Page & Noyes respecting the machinery, etc., furnished by Page & Noyes; that he did not testify to any express agreement with Lamplough that Page & Noyes should have any lien upon that property to secure the payment of the price, or any talk whatever with Lamplough on that subject, and that the facts stated, which are objected to, are found by the referee wholly upon the fact that Lamplough was without property, except what was encumbered by mortgage to the defendant."

In answer to this the referee made the following additional findings:

" In reference to the request for further finding of facts the referee does find that the plaintiff, Page, was the only witness who testified to the course of dealing generally between Lamplough and Page & Noyes. He testified that the firm took special pains to keep the title to the property furnished Lamplough, because he was not responsible; he did not testify to any express agreement with Lamplough that Page & Noyes should have a lien upon the property in controversy to secure the payment of the price, or any talk whatever with Lamplough on that subject; nor that the property was ever sold to Lamplough by any one; he testified that his partner, Noyes, had the charge of this lumber business, that he, Page, bought the machinery that was sent to Lamplough, after conferring with him about the improvements he wanted to make in his mill, and the kind of wheel and other things he wanted. There was no direct evidence that Lamp-

lough ever bought the property in controversy or agreed to buy it.

The referee submits to the court whether or not the evidence and facts detailed in the report have any tendency to show the facts found in that part of the report objected to by the defendant; if the court is of the opinion that the referee is in error as to the tendency of such evidence, and such finding is not warranted, then the facts stated in that part of the report aforesaid, which the defendant objected to, are not found."

*E. R. Hard,* for the defendant.

Personal property attached to the realty as this was becomes a fixture and passes under a previous mortgage, unless there is some element in the case which gives it the continued character of a chattel. 1 Jones Mort., ss. 428, 429; Boone Mort., s. 104; *Davenport* v. *Shants,* 43 Vt. 546.

The report in this case does not show any such element. There was no evidence which tended to show a conditional sale from the plaintiff's firm to Lamplough.

*P. K. Gleed and H. M. McFarland,* for the plaintiff.

The intention of the parties that the title should continue in the plaintiff's firm prevented these chattels from becoming a part of the realty and so passing under the mortgage. *Davenport* v. *Shants,* 43 Vt. 546 ; *Buzzel* v. *Cummings,* 61 Vt. 213.

The opinion of the court was delivered by

ROWELL, J. The defendant makes the case depend mainly or wholly on the nature and effect of the contract or arrangement between Page & Noyes and Lamplough, under which the property in question went into the latter's possession in the spring of 1881 ; whether it went into his possession as a mere bailee, without any contract of purchase on his part, or whether he took it under a contract of purchase that made him a conditional vendee. It is claimed that the report does not show any completed contract of sale, nor any sale nor arrangement that vested in Lamplough any interest in or title to the property more than

that of a bailee ; and that therefore when the property was attached to the mill for the purpose and in the manner shown, with the knowledge and consent of Page & Noyes, who then knew of the defendant's mortgage, it became and was a fixture, and subject to the defendant's prior lien under his mortgage.

Soon after Lamplough bought the mill of the defendant in October, 1879, he made an arrangement with Page & Noyes, which continued till the time of his death, whereby they were to stock his mill with logs. The firm furnished the money to buy the logs, and Lamplough bought them in its name, sawed them, and delivered the lumber to the firm, which kept an account of the transactions, charging Lamplough with the money advanced, and giving him credit for the lumber received, it being understood that Lamplough was to have the benefit of the business above advances and interest and a dollar a thousand for selling, guaranteeing sales, and collecting the money ; and to make the firm safe, the title to all the logs and lumber was to remain in the firm till it was fully paid.

In the spring of 1881, Lamplough wanted to put a wheel into his mill that would give him more power ; and such a wheel would necessitate new shafting, gearing, pulleys, and other things to put the mill in good running order. He applied to Page & Noyes for advances for this purpose, and they supplied him with such things as he wanted, buying them in their own names and paying for them with their own money, and Lamplough put them into his mill, setting and attaching them in the usual way and in the manner necessary for use. Page & Noyes charged to Lamplough the amount thus expended in the same manner and in the same account that they charged the advances to buy logs, and Lamplough credited the firm with the machinery in a book-account that he kept of his dealings with the firm. Subsequently, and on June 30, 1881, Page & Noyes took a mortgage of the mill and the machinery and of other property,

to further secure them against loss, conditioned for the payment of all that Lamplough owed them, called about $1400, which included the amount they paid for the machinery, which was $670. The plaintiff was the only witness who testified to the course of dealing generally between Page & Noyes and Lamplough. He testified that the firm took special pains to keep the title of the property furnished to Lamplough, because he was not responsible ; but he did not testify to any express agreement with Lamplough that the firm should have a lien on this property to secure the payment of the price, nor to any talk whatever with Lamplough on that subject, nor that the property was ever sold to Lamplough ; but he testified that his deceased partner had the charge of this lumber business, although he himself bought the machinery that was sent to Lamplough, after conferring with Lamplough about the improvements he wanted to make in his mill and the kind of a wheel and other things he wanted. There was no direct evidence that Lamplough ever bought the property. or agreed to buy it.

The referee finds that it was understood when the property was delivered to Lamplough by Page & Noyes, that as far as it could lawfully be done, the property was still to remain the property of the firm, that Lamplough was to take it and use it as he did, and that the firm would let him have it when he could pay for it ; and he submits to the court whether or not the evidence and the facts detailed in the report have any tendency to support that finding.

That the evidence and the facts detailed tend to show a sale, not to say a conditional sale, does not admit of much doubt, we think. It is not necessary that there should have been direct evidence of a sale. Anything fairly tending to show that the parties understood the transaction as a sale is enough ; and that they did understand the transaction to be a sale is evidenced by the facts that Page & Noyes debited Lamplough with the amount they paid for the machinery ; that Lamplough credited them with

the machinery; that Lamplough used the machinery in a manner that makes against the idea that he was a mere bailee of it, and in favor of the idea that he was a purchaser of it; and that he secured the price of it by mortgage.

A sale being properly found, the testimony of the plaintiff, that his firm took special pains to keep the title of the property it furnished Lamplough, was quite susceptible, in the circumstances of this case, of being construed to refer to and include the property in question as well as other property; and being thus construed, it tended to show that this sale was conditional.

The plaintiff, then, is entitled to stand on the ground of a conditional sale unless the case contains elements disentitling him to stand there. Treated as a conditional sale, the cases of *Davenport* v. *Shants,* 43 Vt. 546, and *Buzzell* v. *Cummings,* 61 Vt. 213, are decisive in plaintiff's favor, unless this case is distinguishable. The doctrine of those cases is, that water-wheels and other mill machinery attached to mills as this was, retain their identity and character of chattels as against a mortgagee whose mortgage rested on the mill when the machinery was attached, and that the conditional vendor thereof has a right thereto superior to that of the mortagee, and may assert it against him.

But it is claimed that this case is distinguishable from those, in that here machinery in place when defendant took his mortgage was removed, and changes made in the building, to make room for the machinery in question, and that to remove this wheel would necessitate a destruction of the pen-stock and the box or inclosure around the wheel. But in *Buzzell* v. *Cummings* the wheel in controversy was substituted for one in place when the mortgage was given, although it was removable without material injury to the building. But whether so removable or not is not the test. The point of those cases is, not that the machinery in one and the wheel in the other were removable without injury to the buildings, but that the mortgagees were not misled, and had parted with nothing on the faith of the

machinery and the wheels being a part of the realty; and that therefore the conditional vendor's title was just as good against them as it was against the conditional vendees themselves.

It is further claimed that the vendors waived their lien by taking their mortgage. If such a lien comes within the category of liens waivable in that way, it is manifest that this lien was not waived; for the report finds that the mortgage was taken as further security, which rebutts the presumption of a waiver, as it shows an intention not to waive; and whether waiver or not is matter of intention.

There is no ground for the claim that the foreclosure of that mortgage was a satisfaction of the lien, as the report finds that over four hundred dollars remained due after applying the value of the property obtained by the foreclosure aside from this machinery.

Nor is plaintiff's title barred by the Statute of Limitations, as claimed; for there does not appear to have been any adverse possession by Lamplough for any length of time.

*Judgment affirmed.*

TAFT, J., with whom concurred MUNSON, J., dissenting. Whether the sale was conditional, was the decisive point in the case. The testimony of the plaintiff that his firm took special pains to keep the title of property furnished Lamplough in themselves could have had no reference to the property in question, for he did not testify in relation to it, nor to any agreement concerning it. Neither the fact that Lamplough was poor, nor the course of business of the plaintiff's firm to reserve a lien upon property furnished him, had a tendency to estabish a lien upon this property. There was no testimony before the referee tending to show the sale a conditional one, and the finding was unwarranted. I therefore advise a judgment for the defendant.