VERMONT ACCEPTANCE CORPORATION *v.* ROMAINE W. WILTSHIRE.

November Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed January 7, 1931.

*Searles & Graves* for the defendant.

*Pierce & Miles* for the plaintiff.

THOMPSON, J.   This is an action of tort to recover for the alleged conversion of an Essex automobile.   Trial was by court, and judgment was rendered on the finding of facts for the plaintiff.   The defendant excepted.

On August 2, 1928, the defendant purchased said Essex automobile of the Newport Motor Company, Inc., and signed a conditional sale agreement and gave a note for $664.03 for the balance of the purchase price.   The plaintiff, for a valuable consideration, became the owner and assignee of said note and agreement before the note or any part of it was due.

The conditional sale agreement contained the following provision, among others:   ''That said motor vehicle shall not be used in connection with any violation of any state or federal law.''   There was another provision that on violation of any condition named in said agreement, the seller or his assigns might forthwith take possession of said motor vehicle without

the intervention of the public officer and cause the same to be sold, etc.

On October 17, 1928, the United States custom officers found the defendant in the town of Barton upon the public highway in possession of said automobile and carrying therein a large quantity of Canadian liquors. They placed the defendant under arrest, and seized said automobile. Thereafter, on November 15, 1928, said automobile was forfeited to the United States government. Said automobile has never since been returned to, nor has it been in the possession of, the plaintiff, the defendant, or the Newport Motor Company.

On January 15, 1929, the defendant pleaded guilty in the United States District Court of Vermont "to fraudulently, unlawfully, knowingly and feloniously receiving, concealing, buying, selling and facilitating the transportation and sale of" said Canadian liquors "on the 17th day of October, 1928, at Barton, then lately before imported into the United States, well knowing the same to have been imported contrary to law."

The defendant was an infant at the time he bought said automobile and when he was caught transporting said liquors. He became twenty-one years old on January 9, 1929.

The only question raised is whether the facts show such a conversion of the automobile by the defendant that he is liable to the plaintiff in an action of tort for the loss of the same.

The substance of the plaintiff's claim is that, so far as the use of the automobile by the defendant under the terms of the conditional sale agreement is concerned, the defendant was in effect a bailee; that when, in violation of a provision of that agreement, he unlawfully transported intoxicating liquor in said automobile and thereby subjected it to seizure by, and forfeiture to, the United States, it amounted to a conversion of the automobile.

The defendant says he is not liable as a bailee, that the action, if any, which the plaintiff has against him arises by virtue of the terms of the conditional sale agreement, and that his infancy is a defense to the same.

It is true, as claimed by the defendant, that a conditional sale of personal property is not a technical bailment; the true distinction between them being that a conditional sale contemplates that at some time the title shall pass to the vendee and that he shall pay the purchase price, while a bailment con-

templates that the title shall not pass to the bailee, but remains in the bailor, and that the property shall be returned to the bailor. *Whitcomb* v. *Woodworth,* 54 Vt. 544; *Page* v. *Edwards,* 64 Vt. 124, 23 Atl. 917; *Norris* v. *Boston Music Co.,* 129 Minn. 198, 151 N. W. 971, L. R. A. 1917B, 615; notes, 17 A. L. R. 1434, 43 A. L. R. 1257. But there is a similarity between the rights and liabilities of a conditional vendor and vendee and those of a bailor and bailee so far as the title to, and the possession and use of, the property is concerned. This similarity is illustrated in the recent case of *Eklof* v. *Waterston,* 132 Or. 479, 285 Pac. 201, 68 A. L. R. 1002, where the court said: ''The distinguishing feature in all bailments is that possession of the thing bailed is severed from ownership. While the bailor retains the general ownership, the bailee has true possession as distinguished from mere custody. * * * And where a chattel is let for hire, the bailee acquires as against strangers at least a special property in the subject of the bailment.'' This ''distinguishing feature'' of bailments applies with equal force to conditional sales, as the vendor retains the general ownership of the property sold, while the vendee takes the true possession of it, with a special property in it, as against strangers.

Prior to the passage of Act No. 93 of the Laws of 1884, a section of which, now G. L. 2833, provides that, after thirty days from the time of condition broken, the conditional vendor may cause the property to be taken and sold at public auction by a public officer, the conditional vendee had only the right of possession until he performed the condition of the sale. If he breached the condition, the vendor not only had the legal title to the property, but immediately had the absolute right of possession. *Burnell* v. *Marvin,* 44 Vt. 277; *Buckmaster* v. *Smith,* 22 Vt. 203. It was also held, so far as the use of the property by the conditional vendee was concerned, that, as between the original parties, their relation was in effect that of bailor and bailee; and the transaction was often referred to as a bailment, and the parties, as bailor and bailee.

In *Armington* v. *Houston,* 38 Vt. 448, 451, 91 A. D. 366, this Court said: ''In a conditional sale, the possession of the property is ordinarily transferred to the vendee, and very frequently with expectation of both of the parties to the sale that the property will be used by the vendee; but, in such cases, the vendee is until the performance of the condition, only a bailee

for a specific purpose, and he acquires no property in the goods from the possession merely.''

In *Duncan* v. *Stone,* 45 Vt. 118, 122, it is said: ''Before the statute of 1854 (relating to attachment by a creditor of the vendee), the delivery of property under such a contract of conditional sale as appears in this case, was a mere bailment, and carried no attachable interest in the property to the bailee.''

In *Fales* v. *Roberts,* 38 Vt. 503, 507, it is said: ''The property under such sale ordinarily passes into the possession of the vendee for his use until the time of payment arrives. The vendor seldom has any security for payment except his lien upon the property. It is understood, and the vendor expects, that the vendee will use and take such reasonable care of the property as would be required of a bailee for reward.''

Other cases in accord with the foregoing, are: *Harkness* v. *Russell,* 118 U. S. 663, 30 L. ed. 285, 7 Sup. Ct. 51; *Coggill* v. *Hartford & New Haven R. R. Co.,* 3 Gray (Mass.) 545; New Haven Wire Co., Cases (*Baring* v. *Galpin*), 57 Conn. 352, 18 Atl. 266, 271, 5 L. R. A. 300; *Johnston* v. *Whittemore,* 27 Mich. 463.

In *Roberts* v. *Hunt,* 61 Vt. 612, 17 Atl. 1006, and *Smith* v. *Wood,* 63 Vt. 534, 22 Atl. 575, it was held that the provisions of a section of the Act of 1884, now G. L. 2833, changed the rights of a conditional vendee; that now the vendee has a special property in the subject of the sale with a right of possession for thirty days after breach of condition; that the only remedy the vendor has for selling the property is that provided in the statute, and if he proceeds otherwise he is liable to the vendee as for a conversion. See *French* v. *Osmer,* 67 Vt. 427, 32 Atl. 254; *Clark* v. *Clement,* 75 Vt. 417, 56 Atl. 94; *Loverin* v. *Wedge,* 102 Vt. 138, 146 Atl. 248. The vendor, however, may take possession of the property upon condition broken, if the contract so provides. *Nye* v. *Daniels,* 75 Vt. 81, 53 Atl. 150.

*French* v. *Osmer, supra,* was an action on the case for negligence. The question was whether the vendor of personal property sold conditionally with a lien thereon seasonably recorded could maintain an action on the case against the vendee's bailee for injuring the same after thirty days from the time of condition broken. The Court held that the action could be maintained; that the vendor's title was precisely the same in legal

nature as it was before the passage of the statute (G. L. 2833) ; that the remedies adapted to the enforcement of his rights remained to him the same as before, except so far as they were superseded by the statute, and that they were not superseded to the extent of taking away the remedy resorted to; that, although the vendee might not be strictly a bailee, he was properly classed as standing in the position of a bailee, which placed the vendor in the position of a bailor; that standing thus each could maintain all the rights that the law had accorded to them, and their positions were fairly defined; that for injury to such an interest as the plaintiff had, an action on the case was the proper remedy, both against a bailee and against third persons.

█ We hold, on the authority of the foregoing cases, that so far as the use of the Essex automobile by the defendant is concerned, the relation between the plaintiff and the defendant is in effect that of bailor and bailee for hire, and their rights are determined by the principles of law applicable to bailments.

█ Counsel for the defendant say in their brief that, conceding that the transaction was a bailment, yet, since the defendant had the right to use the automobile for the purpose of transportation, there was no conversion, because he did not put it to a different use from that for which the plaintiff claims it was bailed; that mere misuse or abuse of the thing bailed, in the particular use for which the bailment was made, will not enable the general owner to maintain trespass or trover against the bailee; and they cite *Swift* v. *Moseley,* 10 Vt. 208, 33 A. D. 197, in support of this contention. That case was trover by the lessor against the purchaser of the leased chattels from the lessee before the termination of the lease. At the trial below there was judgment for the defendant, on the ground that the plaintiff had parted with his possession of the property during the continuance of the lease, and therefore the action could not be maintained. This Court, in reversing the judgment, said, among other things: ''Any misuse or abuse of the things bailed, in the particular use for which the bailment was made, will not enable the owner to maintain trespass or trover against the bailee. His only remedy is case,'' But the rule is not so broad as stated in this case. If the misuse or abuse of the thing bailed consists of mere negligence or non-feasance, an action for conversion will not lie. *Tinker* v. *Morrill,* 39 Vt. 477, 94

█

A. D. 345; *Manley Bros.* v. *B. & M. R. R.,* 90 Vt. 218, 221, 97 Atl. 674. But if the misuse or abuse consists of a positive, wilful act that destroys the property or exercises dominion over it in exclusion or defiance of the bailor's rights, it amounts to a conversion of the property. *Id. Eddy* v. *Field,* 85 Vt. 188, 81 Atl. 249.

■ The force of the defendant's contention, however, is impaired, if not destroyed, by the further statement of counsel that: "In making this contention we are leaving the terms of the conditional sale agreement out of consideration, since clearly they do not help or hurt the plaintiff's case." But the provision in the sale agreement relating to the use of the automobile by the defendant, cannot be removed from the case so easily; and it is for consideration by this Court.

■ There is nothing in the sale agreement about the use of the automobile by the defendant, aside from the provision that it should not be used in connection with any violation of any state or federal law. It is apparent that the parties understood and intended that it was to be used by the defendant until it was paid for or until breach of condition; and, considering the nature of the property, the character and purpose of the bailment, and the restriction placed upon its use by the written agreement of the defendant, the law implied an agreement that he might use the automobile for lawful pleasure and business purposes. *Alvord* v. *Davenport,* 43 Vt. 30. So long as he used reasonable care in using the automobile for such purposes, the plaintiff could have no ground for complaint.

■ But, when he wilfully used the automobile for transporting intoxicating liquor in violation of the federal law, and of his agreement not to use it for that purpose, such unauthorized use was a conversion of the automobile, and the plaintiff can maintain his action of tort for such conversion. *Swift* v. *Moseley, supra; Briggs* v. *Oaks,* 26 Vt. 138, 145; *Gray* v. *Stevens,* 28 Vt. 1, 65 A. D. 216; *Thrall* v. *Lathrop,* 30 Vt. 307, 73 A. D. 306; *Willmarth* v. *Pratt,* 56 Vt. 474; *Green* v. *Sperry,* 16 Vt. 390, 42 A. D. 519; *Malaney* v. *Taft,* 60 Vt. 571, 15 Atl. 326, 6 A. S. R. 135; *Stillwell* v. *Farewell,* 64 Vt. 286, 24 Atl. 243; *Hart* v. *Skinner,* 16 Vt. 138, 42 A. D. 500; *Grant* v. *King,* 14 Vt. 367. In *Swift* v. *Moseley, supra,* the leading case in this State, the Court said: "But if the thing be put to a different use from that for which it was bailed, by the consent of the

bailee, we think the bailor may maintain trespass or trover." The Court further said that the reason for this was that the act of the bailee in selling the property did, *ipso facto,* determine his right, and revive the right of the bailor to immediate possession.

In *Willmarth* v. *Pratt, supra,* the plaintiff rented his farm to the defendant on shares, reserving a lien on all produce raised on the farm as security for the performance of the agreement in the lease. The defendant sold produce before the termination of the lease, and while he was indebted under it. The Court, in holding that the plaintiff could maintain an action of trespass, before the termination of the lease, for the conversion of the produce, said: "The general ownership of it was in the plaintiff; it was made so by the terms of the lease, and the defendant had no right to sell it. * * * But when in violation of his contract he sold the property, without right, his acts became tortious, his rights were terminated, and the plaintiff became entitled to its immediate possession, and could maintain trespass to recover it."

In many of the cases, both in this and in other jurisdictions, the defendant hired a horse to drive or ride a certain distance or to a certain place, and it has been held uniformly that the defendant was liable for conversion if he drove or rode the horse beyond the agreed distance or place. See notes 3 Ann. Cas. 470, 12 Ann. Cas. 692, Ann. Cas. 1918C, 948, on "Unauthorized Use of Chattel by Bailee as Conversion."

In *Baxter* v. *Woodward,* 191 Mich. 379, 158 N. W. 137, 139, Ann. Cas. 1918C, 946, the plaintiff placed an automobile in the possession of the defendant to be sold on commission, with the agreement that it should be driven only so that prospective buyers could examine and demonstrate it. The defendant, in violation of the agreement, drove the automobile for his own purposes, and it was badly damaged while he was so using it. The court, in holding that the plaintiff could maintain trover for the value of the automobile, said: "The general rule is that if a bailee, having authority to use the chattel in a particular way, uses it in a different way, or to a greater extent than authorized, such unauthorized use is a conversion of the chattel, for which the bailor may maintain trover for its value. It is a conversion for a bailee for hire, to apply the thing hired to a purpose other than that agreed upon in the contract of hire."

■ Nor is the defendant's infancy a defense to this action. The law is well settled that so long as an infant bailee keeps within the terms of the bailment, he is not liable for damage to the property caused by his negligence or nonfeasance; but, when he wilfully departs from the object of the bailment and puts the property to an unauthorized use, it immediately terminates the bailment and amounts to a conversion of the property, and he is liable as much as if he had taken the property in the first instance without permission. *Towne* v. *Wiley*, 23 Vt. 355, 56 A. D. 85; *Ray* v. *Tubbs*, 50 Vt. 688, 28 A. R. 519.

■ ■ But, aside from the question of bailment, we think that on the general principles applying to the rights of a creditor, who retains or receives a lien on personal property to secure his debt, and of the debtor, the defendant is liable. In such a case the right of the debtor to the possession and use of the property, except as the same may be regulated by statute, is a matter of contract, express or implied. If the debtor, without the consent of the creditor, and in violation of his agreement, makes such an intentional and wilful use or disposition of the property that it is lost or destroyed or passes from his possession and control so that he cannot comply with a demand of the creditor to deliver the property, he is guilty of a conversion of it, and is liable in an action of trover. *Hill* v. *Bedell*, 98 Vt. 82, 126 Atl. 493; *Symes* v. *Fletcher*, 95 Vt. 431, 115 Atl. 502; *Manley Bros.* v. *Somers*, 100 Vt. 297, 137 Atl. 336; *Reed* v. *Rowell*, 100 Vt. 41, 134 Atl. 641; *Smith* v. *Ladrie*, 98 Vt. 429, 129 Atl. 302. And, when, as in this case, the conversion was in reckless and wanton disregard of the rights of the plaintiff, a jury may in their sound discretion allow exemplary damages, although the action is trover. *Green* v. *LaClair*, 89 Vt. 346, 95 Atl. 499; *Symes* v. *Fletcher, supra.*

■ The defendant says that there is no proof of a demand and refusal, but this is not necessary when the conversion is otherwise established, as it is here. *Loverin* v. *Wedge*, 102 Vt. 138, 143, 146 Atl. 248.

The defendant says that his use of the automobile for transporting liquor did not necessarily subject it to seizure and condemnation proceedings as would deprive the plaintiff of its rights as a *bona fide* lienholder; that it cannot be said that there would have been a conversion of the automobile had the plaintiff

succeeded in establishing, as against the government, its claimed interest as an innocent lienholder.

The defendant misses the point in the case. The conversion of the automobile was complete when the defendant wilfully, and in violation of his express agreement, used it for "rum running." The loss of the automobile by seizure and forefeiture followed the conversion, and because of the unlawful use made of it by the defendant. There was no obligation on the part of the plaintiff to attempt to get the automobile back from the government. When the defendant put it to the unauthorized use, he assumed the very risk from which he now attempts to escape. *Campbell Chevrolet Co.* v. *Walsh,* 102 Cal. App. 100, 282 Pac. 510.

*Judgment affirmed.*