## James Johnston v. J. Henry Whittemore and others.

*Trover: Bailment: Wrongful determination: Conversion: Transfer.* One who, upon separating from his wife, has placed in her possession, and for her separate use, and as her individual property, agreeing to pay the balance due therefor, an organ which he received under an agreement in writing, whereby he undertook to hold it in his possession as the property of another, of whom he was to purchase it, the organ in the meantime, and until fully paid for as therein provided, to remain the property and subject to the direction of the vendor, and which he had not yet paid for, thereby makes himself liable in trover to his vendor for the balance due on the contract, on the ground of a wrongful determination by him of the contract of bailment; such transfer to his wife would be as clearly a conversion as if sold to any other person for any consideration he might have agreed upon.

*Replevin: Non-suit: Payment of judgment for value: Voluntary purchase.* The fact that the plaintiffs in such a suit in trover had before brought replevin against defendant and wife for the organ in question, thereby getting possession thereof, and had suffered judgment for its value upon a non-suit to pass against them in favor of the wife, and had paid that judgment, would not affect the rights of the parties, and would not operate like a voluntary purchase by the plaintiffs of the wife.

*Declaring void a special contract of sale: Possession.* If the plaintiffs' in bringing this action, had proceeded upon the ground of declaring the sale and special contract void, under a provision authorizing this in case of default in any of the conditions therein stipulated to be performed, they could not recover, because they had not taken the necessary steps to rescind and place the defendant in *statu quo.*

*Trover: Damages: Interest in the property.* The plaintiffs are not entitled to recover the full value of the organ, nor beyond the balance due on the contract, which represented their entire interest in the property at the time of the conversion; and the provision in the contract authorizing them to retain payments made, as damages for non-performance, would not affect the extent of the recovery in this case, for that provision is attached to, and is a part of, and applies only to the clause providing for declaring the contract void and retaking the property upon that ground.

*Stipulated damages.* Such a provision is not one that could be enforced as for stipulated damages, as it is not based upon any idea of just and adequate compensation.

*Practice in supreme court: Judgment: Costs.* There being no dispute as to the facts, and the judgment being correct, except in the amount of damages, it is affirmed to the proper amount, with costs of·the circuit to plaintiffs below, and reversed as to the excess, with costs of this court to plaintiff in error.

*Heard July 10. Decided July 15.*

Error to Alpena Circuit.

*Sutherland & Wheeler,* for plaintiff in error.

*D. B. & H. M. Duffield,* for defendants in error.

CHRISTIANCY, CH. J.,

This was an action of trover, brought by defendants in error against Johnston (plaintiff in error) in the circuit court for the county of Alpena, to recover the value of a musical instrument, called an organ, which had been conditionally sold by the plaintiffs below to Johnston, on the terms stated in an agreement signed by him, of which the following is a copy:

"I hereby agree to hold in my possession one organ, valued at two hundred and twenty-five dollars, being the property of J. Henry Whittemore & Co., 179 Jefferson avenue, Detroit, which instrument I agree to purchase, and pay for the same, to the said J. Henry Whittemore & Co., or their order, at Alpena, the sum of one hundred and seventy-five dollars in two instalments, as follows: One note at two months from May 1st, and one note at nine months from May 1st, with ten per cent. interest added until paid, payable annually from date hereof on each instalment until paid;

"It being expressly understood and agreed that the said instrument is to remain the property of the said J. Henry Whittemore & Co., and subject to their direction, and not to be moved from place to place without their written assent, until the full amount shall have been paid, as above specified, at which time, and not till then, is the said instrument to be my property.

"It is further agreed, in case of default in any of the conditions above stipulated to be performed, that the said Whittemore & Co. may declare this agreement void, and take possession of the said instrument wherever it may be found, without legal process; and the payments that shall have been made may be retained to apply as damages for the non-performance of this agreement.

"I also agree to have the said instrument fully insured for the benefit of the said Whittemoree & Co., and that the policy will remain in their hands until the instrument is fully settled for.

"Given this 29th day of April, in the year one thousand eight hundred and sixty-nine.

(Signed) "JAMES JOHNSTON."

Fifty dollars was paid down on the purchase of the instrument, which is not included in the notes mentioned, making the whole price two hundred and twenty-five dollars.

On the 14th of August, 1869, seventy-five dollars was paid and indorsed on Johnston's agreement, and the first note, which was for that amount, was given up. The other note for one hundred dollars has not been paid, nor any interest upon it.

About February 1st, 1870, Johnston and his wife separated, and Johnston (in the words of the record) "placed in her possession, and for her separate use, and as her individual property, the said organ, and agreed to pay the balance due therefor."

Afterwards, and prior to the 11th of May, 1870, the last note remaining unpaid, plaintiffs presented the note to Johnston and requested him to pay it, which he refused to do, saying he had let his wife have the organ, and she must pay for it. She was then requested to pay, and refused. And thereupon, on the 11th of May, 1870, plaintiffs commenced a suit in replevin against Johnston and his wife, and the property was taken on the writ and delivered to plaintiffs. Johnston did not appear in the replevin suit; but the wife appeared and put in a plea.

The case was brought on for trial August 2d, 1871; and after the jury were sworn, the plaintiffs (Whittemore & Co.,) submitted to a non-suit. The wife of Johnston, in whose possession the organ had been found, elected to take judgment for the value of the property, which being assessed at two hundred dollars, judgment was entered in her favor for that amount and costs, which plaintiffs paid.

The plaintiffs, after taking the property on the writ of

27 MICH.—59.

replevin, and before the present action was brought, sold the organ for two hundred dollars.

There was no evidence before the jury in the present case that the plaintiffs ever declared void the articles of agreement signed by Johnston, nor that they ever offered to cancel the same, nor that they had ever offered to surrender up said . unpaid note, nor that there was any demand made for the organ, except one which was made upon Johnston after the judgment in the replevin suit, and when plaintiffs had the property, if they had not already sold it. But the plaintiffs produced this unpaid note and the said agreement, on the trial, they having been left in their possession from the time they were made; and before the proofs in the case were closed, handed them to the court to be surrendered to the defendant, but he refused to accept them.

It was insisted on the part of the defendant below (plaintiff in error), and the court was requested to charge, that the defendant had a special property in, and the right of possession of, the organ, until, in consequence of his nonpayment, or for default in his not performing some other part of the agreement, the plaintiffs should declare it void; that in order to declare it void effectually, they should, in some manner, signify to defendant that they no longer recognized the contract as in force, and offer to return the note which was unpaid; that until the agreement was thus declared void, the defendant had the right of possession, and plaintiffs could not maintain an action for the conversion of the property; that if plaintiffs could recover at all, they could only recover the balance remaining due on the contract and the note unpaid; and further, that the plaintiffs could, at all events, recover only nominal damages.

The court refused thus to charge; but did charge, that under the contract the organ remained the property of the plaintiffs while the purchase price was unpaid; but that defendant had a right of possession until default in making

payment, and a right to acquire an absolute title by making the payment; that until the payment became due, defendant had a right to the possession of the organ, and plaintiffs could not retake it, if defendant kept the same in his possession; nor could the plaintiffs dispossess the defendant after default in making the payment, until they declared the contract void. But that there was something else in the case besides the duty of making the payment; that the transfer of the property to a third person was admitted; that this was a conversion which entitled the plaintiffs to maintain the suit, and was sufficient, though the plaintiffs did not declare the contract void, nor demand the property before suit. And there being no dispute upon the evidence, he told the jury to find a verdict for the plaintiffs for the value of the organ, with interest at seven per cent. from the first day of February, 1870, when the defendant turned over the organ to a third person.

We think this charge was substantially correct, except as to the amount of damages.

If the plaintiffs were in other respects entitled to maintain the action, which we shall presently consider, we think the act of defendant in assuming to transfer the property to his wife on separation, as her own separate property, and to give a good title, was in defiance of the owners' rights, and as clearly a conversion as if sold to any other person for any consideration he might have agreed upon.

It is not claimed upon either side that the plaintiffs by the replevin suit had put an end to the contract; and though, by that suit, they had obtained possession of the property, this was by the election of the party to whom the defendant had wrongfully transferred it, and they had been compelled to pay its full value and costs; and so far as the defendant's rights are concerned, the case, upon this point, stands upon the same ground as if the value had thus been paid to him for the property. But, as the replevin suit was not decided upon the merits, and under the somewhat harsh provisions of our statute, which, in case of a non-

suit upon any informality, allows the defendant to elect to take judgment for the value of the property—a provision which, in justice, ought never to have been applied to such cases unless the plaintiffs refused to return the property, which operates as a trap, and makes a judgment of mere non-suit sometimes practically a final judgment,—we cannot give to this suit the effect between these parties of a voluntary purchase by the plaintiffs from Mrs. Johnston, nor is this effect claimed for it in this case.

It may be admitted for the purposes of this case, that if the plaintiffs, in bringing this action, had proceeded upon the ground of declaring the sale and special contract void, they could not recover, as they have failed to show that they have taken the necessary steps to rescind and place the defendant *in statu quo.* It is also true that they could not declare the special contract void, and proceed to take the property on that ground, except for "default in some of the conditions" therein "stipulated to be performed" by the defendant.   And it is urged by the plaintiff in error that in order to maintain trover, the plaintiffs must have had the right of possession at the time of the conversion, and, by the contract itself, the only mode in which the plaintiffs could become entitled to the possession was by forfeiting or rescinding the contract, which had not been done, and that there was, therefore, no right of possession, and trover cannot be maintained.

But there are many cases in which it has been held, and as we think properly, that to maintain trover, it is not necessary that the right of possession should have existed one moment prior to the conversion, but may be given or spring out of the conversion itself; as when a bailee wrongfully repudiates and terminates the bailment of property in his possession under an agreement giving him the right to the possession, or the use of it, for a certain time, or on certain conditions, which agreement he has violated by the destruction or sale of the property, or its diversion to some use or purpose not allowed by the terms of the bailment.   Such

wrongful termination of the bailment or wrongful conversion restores to the bailor the right of possession, and the right to sustain an action of trover for the conversion. And yet the right of possession, in such cases, is given by the very act of conversion.—*Grant v. King, 14 Vt., 367; Bryant v. Wardell, 2 Exch., 479; Cooper v. Willomatt, 1 C. B., 672;* and see *Sanborn v. Colman, 6 N. H., 14; Swift v. Moseley, 10 Vt., 208,* and *Fenn v. Bittleston, 7 Exch., 152.*

But it is urged that, under this agreement, the plaintiffs could only obtain the right of possession by declaring the contract void, "for default" in some of the "conditions," thereby "stipulated to be performed." And if this wrongful termination of the contract, by sale or disposition of the organ, was one of the conditions referred to in this provision, there might possibly be some force in this objection, though we decide nothing upon that point. What are the "conditions" in this contract "to be performed by the defendant," and for default in which plaintiffs might declare the contract void, and take the property?

1st. That Johnston should hold possession of the property on the terms of the agreement;

2d. That it should not be moved from place to place without written assent [There is no evidence that it was moved at all); and,

3d. That he should pay as therein agreed.

These were all the "conditions" stipulated to be *performed* by him.

There was another provision of the contract, that the organ should remain the property of the plaintiffs until paid for; but this was not a provision which called for any thing to be *done* or *performed* by Johnston; it was simply the declaration of the principle upon which the contract was made, showing it to be a bailment, under which the defendant might acquire the property by performing the three conditions or stipulations above mentioned, and which were to be performed by him. The plaintiffs' right of possession does not depend upon the non-performance by the defend-

ant of any of those enumerated conditions. But their right is that of bailors, to retake possession, or recover for its conversion, upon a wrongful determination by the defendant of the contract of bailment, beyond and independent of the conditions " stipulated to be performed by him." This right springs from the nature of the contract of bailment, and is given by the common law, and no stipulation of the contract has assumed to cut off or modify this common-law right. See *Fenn v. Bittleston*, above cited, which we think involves a similar principle.

But we think the court erred in instructing the jury to allow the whole value of the organ as damages. All the purchase price had been paid except the amount of the last note (one hundred dollars and interest) ; that represented their entire interest in the property at the time of the conversion.

The conclusion of the circuit judge was probably based upon the provision of the contract, that " the payments that shall have been made may be retained to apply as damages for the non-performance of this contract." This clause is connected with, and we think intended as a part of, the provision for declaring the contract void and retaking the property, and was intended to apply only to such a contingency ; and the plaintiffs have not proceeded here upon that ground. What might have been the effect of such a provision in case the contract had been declared void, we need not decide ; though it is clear such a provision is not one which the law would enforce, as for stipulated damages, as it is not based upon any idea of just and adequate compensation.

As there is no dispute about the facts, and it is evident from the record that the amount of damages the plaintiffs were entitled to recover was the amount of the unpaid note, with interest at ten per cent. ; and the court having directed a verdict to the full amount of the value of the property, which was erroneous ; the judgment is affirmed to the amount of the note, and interest to the date of the

judgment, August 19th, 1872, being one hundred and thirty-three dollars, with the costs in the circuit court to the plaintiffs below, and reversed as to the excess, with costs to the plaintiff in error in this court.

COOLEY, and GRAVES JJ., concurred.

CAMPBELL, J., did not sit in this case.