UNITED SHOE MACHINERY COMPANY *vs.* J. SUMNER HOLT & another.

Suffolk.    December 9, 1903. — February 25, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Damages.    Equity Jurisdiction.    Equity Pleading and Practice.    Conversion.*

On the issue of the market value of certain machines, where it appears that the only market for the machines in this Commonwealth is in selling them to jobbers for export, the measure of value is the market value here, and the value of the machines is not to be arrived at by deducting from their value in a foreign market an amount representing the expense and risk of sending them to that market.

A bill in equity was brought to obtain possession of certain machines.  On an application for a temporary injunction, it was found as a fact that the machines had been shipped out of the Commonwealth, and the defendant was ordered to file an answer before the time for filing it under the rules of court.  The case was sent to a master and proceeded to a hearing.  In this court the defendant raised the point that on the facts there was no jurisdiction in equity.  *Held,* that this point was not open to the defendant; that, by the order directing the answer to be filed before it was required by the rules, the court retained the suit for the assessment of damages, and that, by appearing before the master without objection to the jurisdiction, the defendant had waived this objection, even if it would have been good had it been made at the proper time.

Where a bailee of goods sells the property outright, without authority to do so, the bailment is ended, and the general owner has a right of immediate possession, on which he can maintain trover or equitable replevin.

A suit in equity to obtain possession of certain machines, after it was shown that the machines had been shipped out of the Commonwealth, was retained by the court for the assessment of damages, thus changing the suit from equitable replevin to a proceeding in the nature of trover.  The lessee of the machines had sold them outright without authority, and both the lessee and the purchaser were made defendants.  The defendant purchaser objected that the lessee was joined improperly as a defendant.  *Held,* that, assuming that the same rule applied in equitable replevin as at law, by which only the person in wrongful possession of the chattels could be sued in replevin, yet the defendants would have been liable jointly in trover and were retained properly as defendants in the assessment of damages.

In a suit in equity it is too late, on the conclusion of the taking of evidence before a master, for a defendant to make objection to the joinder of another defendant as a party.

BILL IN EQUITY, filed December 6, and amended December 17, 1901, against J. Sumner Holt and Russell S. Holt, both of Boston, copartners doing business under the name of J. S. Holt and Company, and Myron L. Whitcomb and Howard L. Clark, both of Haverhill, copartners doing business under the name of J. H. Winchell and Company, to obtain possession of twenty-six lasting machines leased by the Boston Lasting Machine Company, whose rights had been acquired by the plaintiff, to J. H. Winchell and Company and sold by them to the defendant J. Sumner Holt, who, as alleged in the amendment to the bill, had sold the machines to persons unknown to the plaintiff and shipped them to places outside of this Commonwealth.

The proceedings in the case are stated in the opinion. Upon the presentation of the master's report and the exceptions thereto, the Superior Court made a final decree overruling a motion of the defendant J. Sumner Holt to recommit the master's report, and overruling the same defendant's exceptions to the report, also overruling the plaintiff's exceptions to the master's report, and ordering that the report be confirmed, declaring that the defendants J. Sumner Holt, Myron L. Whitcomb and Howard L. Clark were jointly and severally liable to the plaintiff in the sum of $5,070, with interest from March 4, 1901, $680.22, a total of $5,750.22, and ordering that the plaintiff have execution for that sum and costs to be taxed by the clerk.

The plaintiff appealed from the decree, claiming a larger amount than that given by the decree. The defendant J. Sumner Holt also appealed from the decree.

*E. F. McClennen,* for the plaintiff.

*W. A. Buie,* (*J. E. Crowley* with him,) for the defendant J. Sumner Holt.

LORING, J. By the bill in this suit when it was filed, the plaintiff sought to obtain possession of twenty-six lasting machines which had been leased to J. H. Winchell and Company and sold outright by them to the defendant Holt for $300. By what is entitled an "interlocutory decree" but which apparently was made on a motion for a temporary injunction, it was found that the machines had been shipped out of the Commonwealth, and the defendant was directed to file his answer before it was

due.  This was in effect an order that the bill be retained for the assessment of damages, which was the only relief which could be given under those circumstances.  The case was sent to a master by an order which is not included in the record.

From the master's report it appeared that the twenty-six machines in question were made by the Boston Lasting Machine Company and leased to J. H. Winchell and Company in 1891–1893.  The lessor sold its interest in all Boston lasting machines to the plaintiff in October, 1900, and the sale to the defendant Holt was in March, 1901.  It appeared that at some time between 1893 and 1901 the plaintiff had come into control of the Hand Method lasting machine, and that the plaintiff found it to be for its interest to sell the Hand Method machine in preference to the Boston machine.  As showing that there was a market for the Boston machine in Boston after the plaintiff had taken up the Hand Method machine, evidence was admitted " that some manufacturers had refused to surrender their leased machines," and " there were also occasional orders for it from abroad."  It was also found by the master that " These machines were sold by the Boston Lasting Co. and the complainant as its successor in Boston, in quantity for resale abroad, with the collateral agreement that they were to go out of the country, and that if any should afterwards be returned to the United States, the title to such machines so returned should revest in the Boston Lasting Machine Co., or in the complainant its successor."  The master also found that " under the above conditions sales of the Boston lasting machines in quantity have been made within the last three years in Boston by the Boston Lasting Machine Co., or by the complainant as its successor, at two hundred and fifty dollars a machine, and that said machines were subsequently resold abroad for five hundred dollars each ; and this I find as a fact.  The purchasers of these machines in quantity to be sent abroad were corporations distinct from, but controlled by, the Boston Lasting Machine Co., or the complainant as its successor.  The sales of the machines to such corporations were outright sales, and the jobbing corporation received the profit on a resale of the machine abroad for five hundred dollars," and that " Boston lasting machines to be used in the United States were not sold, but were leased, for the life of the

patents thereon, to boot and shoe manufacturers throughout the country by a written lease." Officers of the Boston Lasting Company and of the plaintiff company testified that "the fair market value of a Boston lasting machine was five hundred dollars, or from five hundred to one thousand dollars," and one of the partners of J. H. Winchell and Company testified "that the market value of the twenty-six machines was three hundred dollars"; but he also testified that "he had never known of the sale of a Boston lasting machine, and his only knowledge of the market value of shoe machinery was derived from his purchase of various kinds of shoe machinery for his own use at different times."

The master found "that in 1901 there was still some demand for the Boston lasting machine, principally from abroad, and that when one was sold it was still sold in the United States to go abroad, for two hundred and fifty dollars," reported all the facts bearing upon the market value of Boston lasting machines in March, 1901, and ruled "that the market value of a new Boston lasting machine in March, 1901, was the price at which it was sold in quantity in Boston to jobbers for resale abroad, to wit, two hundred and fifty dollars, and not the price for which it was sold by the jobbers abroad, to wit, five hundred dollars."; and "assuming this ruling to be correct," he found "that the market value of these twenty-six second-hand machines in March, 1901," was $195 each.

1. The plaintiff has raised the question of the correctness of this ruling and finding by the third, fourth, fifth, seventh and eighth exceptions taken by him to the master's report. Where a defendant is liable for converting an article of personal property which has a market value in Massachusetts, the measure of damages is to be ascertained by its market value here, and not by the value which it may be found to have here by deducting from its market value in a foreign market a sum which would fairly represent the expense and risk of sending it to the foreign market. This was assumed to be the law in *Glaspy* v. *Cabot*, 135 Mass. 435. There may be cases in which the evidence warrants the ruling that the damages are to be measured by the market value in the domestic or in the foreign market. See *Coolidge* v. *Choate*, 11 Met. 79. This is not such a case. On

the facts found by the master the only market for these machines in Massachusetts was to jobbers for export. The defendant Holt sent the machines abroad and sold them there, that is to say, he did what a jobber for export would have done had he bought the machines. We are of opinion that the ruling was right.

2. By his eighteenth request for a ruling to be made by the master, the defendant undertook to object to the jurisdiction of the court by reason of the fact that on the facts existing or supposed by the plaintiff to exist when the bill was brought, there was no jurisdiction in equity, and for that reason the bill could not be retained for the assessment of damages. But, as we have already said, the fact that the machines had been shipped out of the Commonwealth was found as a fact in the " interlocutory decree " made December 9, 1901, directing the answer to be filed before it was due under the rules. After this the suit was retained for the assessment of damages. The defendants waived this objection (if the objection was a good one) by going to a hearing before a master on an answer in which this objection was not set up.

3. By his exception to the master's report in not giving the first, second, third, fourth, fifth and sixth rulings of law requested by him, the defendant has raised the objection that until the lease had been terminated by the plaintiffs, J. H. Winchell and Company had the right of possession and therefore that neither equitable replevin would lie, on which jurisdiction this bill as originally brought was founded, nor would an action of trover lie, for which in effect the bill was retained. Possession, or an immediate right to possession, is necessary to maintain equitable replevin as well as an action of trover or a writ of replevin, but where a bailee misuses the subject of the bailment, as he does in case of an absolute sale transferring the whole property, the bailment is ended and the general owner has an immediate right of possession on which he can maintain trover. The point is concluded by the decision in *Carter* v. *Kingman*, 103 Mass. 517, although not discussed in terms in the opinion. But it is a matter which is well settled. See Putnam, J., in *Ayer* v. *Bartlett*, 9 Pick. 156, 160 ; *Fenn* v. *Bittleston*, 7 Exch. 152; *Cooper* v. *Willomatt*, 1 C. B. 672 ; *Bryant* v. *War-*

*dell*, 2 Exch. 479; *Farrant* v. *Thompson*, 5 B. & Ald. 826; *Johnston* v. *Whittemore*, 27 Mich. 463; *Grant* v. *King*, 14 Vt. 367; *Sanborn* v. *Colman*, 6 N. H. 14. The reason why the action failed in *Newhall* v. *Kingsbury*, 131 Mass. 445, and in *Raymond Syndicate* v. *Guttentag*, 177 Mass. 562, was because, when the writ was taken out, nothing beyond an assignment of the bailee's interest, or what was tantamount to that, had taken place; and ordinarily a lessee or conditional vendee has a right to transfer his interest. See *Glaspy* v. *Cabot*, 135 Mass. 435, 440.

4. By an exception to the master's report for not giving the ninth ruling requested by him, the defendant Holt objects that he and J. H. Winchell and Company cannot be jointly held in this suit. It is true that in an action of replevin two persons cannot be made parties defendant merely because they are jointly liable in trover, *Richardson* v. *Reed*, 4 Gray, 441, and it may be assumed that the same rule applies in equitable replevin. But it appears that the defendants J. H. Winchell and Company were made parties defendant by an amendment to the bill, consented to by the defendant Holt after it had appeared of record, that the goods had been shipped out of the Commonwealth and the bill had been retained for the assessment of damages. In an action of trover the seller and the purchaser can be jointly held liable. *Smith* v. *Briggs*, 64 Wis. 497. *Grant* v. *King*, 14 Vt. 367. See *McAvoy* v. *Wright*, 137 Mass. 207, 210. It is not necessary to point out that on the conclusion of the taking of evidence before the master it is too late to take an objection of this kind.

5. We find no error of law in the finding of the master as to the damages due.

6. The other questions have not been argued. If under these circumstances the defendant could be treated as not waiving them by stating that he does not do so, it is enough to say that we see no error of law in them.

*Decree affirmed.*