**Thomas J. DODD, Plaintiff,**

**v.**

**Drew PEARSON and Jack Anderson, Defendants.**

**Civ. A. No. 1193–66.**

United States District Court
District of Columbia.

Jan. 15, 1968.

See also D.C., 277 F.Supp. 469.

John F. Sonnett, New York City, and Donald J. Mulvihill, Washington, D. C., for plaintiff for the motion.

John Donovan, Washington, D. C., for defendant Pearson, opposed.

Warren Woods, Washington, D. C., for defendant Anderson, opposed.

## OPINION

HOLTZOFF, District Judge.

The problem presented in this case is whether a person who receives copies of documents that have been purloined from another and uses the information contained in them knowing that the originals have been purloined, is liable for damages to their owner. This question is answered in the affirmative to the extent that an action for damages lies under such circumstances. The Court expresses no opinion at this stage as to the measure of damages, and, in fact, whether substantial damages may be recovered under the circumstances of this case.

The plaintiff, Thomas J. Dodd, is a Senator of the United States. The defendants, Drew Pearson and Jack Anderson, are journalists, who write an article daily, popularly known as a "column". These articles are published more or less simultaneously in numerous newspapers throughout the United States. The plaintiff alleges in his second amended complaint that some of his former employees entered his offices without authority, rifled his files, purloined numerous papers, made copies of them, and delivered the copies to the defendants, who knew that the copies had been made from papers unlawfully obtained. The plaintiff further avers that the defendants from time to time published information contained in these papers, and sues for damages. The plaintiff moves for partial summary judgment solely on the issue of liability, leaving the question of the measure of damages for later consideration.[1]

It appears from the record submitted on this motion that the following salient facts are established. On several occasions in June and July, 1965, two former employees of the plaintiff, at times with the assistance of two members of the plaintiff's staff, entered the plaintiff's offices without authority and unbeknownst to him, removed numerous documents from his files, made copies of them, replaced the originals, and turned over the copies to the defendant Anderson, who was aware of the manner in which the copies had been obtained. The defendants Pearson and Anderson thereafter published articles containing information gleaned from these documents.[2]

The problem presented in this case can best be considered in juxtaposition with the decision of this Court in Liberty Lobby, Inc. v. Pearson, D.C., 261 F.Supp. 726. The cause of action involved in

---

1. Rule 56(d) of the Federal Rules of Civil Procedure in effect permits the granting of a partial summary judgment.

2. Rule 9(h) of the Local Rules of this Court, provides as follows:

 "*Motions for Summary Judgment.* In addition to the points and authorities required by subparagraph (b) of this Rule there shall be served and filed with each motion for summary judgment * * * a statement of the material facts as to which the moving party contends there is no genuine issue.

 "Any party opposing the motion, may, not later than three days prior to the hearing, serve and file a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

 "In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are asserted to be actually in good faith controverted in a statement filed in opposition to the motion."

 The facts stated in the text of this opinion are taken from plaintiff's statement of material facts, supported by depositions, affidavits and similar material. The defendants' counter-statement of genuine issues of fact raises issues concerning matters that the Court considers immaterial to the question to be determined on this motion.

that case was very similar to the one presented here. The complaint alleged that an employee of the plaintiffs unlawfully and in breach of confidence copied certain confidential letters from their files and turned the copies over to the defendants, who were able to publish their contents, or the information contained in them. The action sought an injunction and damages. The matter came before this Court solely on a motion for a preliminary injunction against the publication of the information. The Court denied the application on the ground that to restrain publication would encroach on the freedom of the press. This decision was affirmed by the Court of Appeals (December 27, 1967, not yet reported). This Court restricted its opinion in the *Liberty Lobby* case to the question whether an injunction should issue. It pointed out the limitation in the following manner:

"The Court does not have before it at this time the question whether the plaintiffs have a good cause of action for damages for conversion of the letters or for breach of trust or any other similar tort * * * The only matter that the Court has before it at this time is the question whether it may enjoin newspaper men from publishing copies of documents or information contained in documents that the newspaper men consider newsworthy, merely because the information or copies were obtained by a breach of trust."

The Court answered the question in the negative. In the case at bar, we are confronted with the converse query, namely, whether an action for damages would lie under such circumstances.

 Freedom of the press comprizes freedom to publish. It liberates the press from prior restraint. It precludes equity from enjoining a publication. Nevertheless, the publisher is subject to the consequences of his act. Freedom of the press does not confer immunity from liability for a tort or from an action .for damages. For example, the publication of a libel may not ordinarily be enjoined, but having published a defamatory statement, the publisher is subject to an action for damages. Similarly, freedom of the press does not comprize an unrestrained and untrammeled right of access to sources of information for use in publication.

In Trimble v. Johnston, D.C., 173 F. Supp. 651, 655, this Court wrote as follows:

"Freedom of the press comprehends a right to print and publish and to disseminate, circulate, and distribute matters that have been printed, without prior restraint, without license, without censorship, and without discriminatory taxation, but subject to the consequences of the law of libel and to the criminal penalties imposed by such laws, as those that ban obscenity, fraud, incitement to crime, espionage and the like, or that protect the needs of national defense and security. The press is not liberated, however, from amenability to law generally. For example, newspaper publishers and press associations are subject to the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and the Antitrust laws, 15 U.S.C.A. § 1 et seq. the liberty of the press does not include any legal right of securing assistance from public officials in procuring information that it is desired to print. It does not comprise any alleged right of access to material not available to others, any more than it would include the privilege of attending closed meetings at which news of interest might possibly be gathered."

It follows that the question whether under circumstances presented in the case at bar and in the *Liberty Lobby* case, supra, the defendants are liable to an action for damages, is governed by different principles than the issue whether an injunction may be granted against the publication of copies of

documents illegally obtained by persons who transmit them to the publisher.

■ On the uncontroverted facts, the individuals who without authority entered the plaintiff's office, rifled his files, removed documents and made copies of them, which they turned over to the defendants, would be liable for damages in trespass and conversion. They are not being sued. It is well settled, however, that a person who receives and uses the property of another that has been wrongfully obtained, knowing that it was so obtained, is likewise guilty of conversion and liable for damages.

This principle was recognized in an early case in the District of Columbia, Voss v. Baker, 1802, Fed.Cas.No.17,012, 1 Cranch C.C. (1 Dist.Col.) 104. The report of that case contains the following statement:

"Trespass for breaking up a scow. THE COURT instructed the jury that if the defendant, knowing that Tuel committed a trespass in taking and breaking up a scow of the plaintiff, received from Tuel the timbers and planks of the scow, knowing them to be the property of the plaintiff, which had been so taken, he is answerable in this action, being equally as guilty as Tuel."

In Rice v. Clark, 8 Vt. 109, the master of a ship lent its anchor to the defendant without the permission of the owner of the vessel. The defendant was held liable in conversion. The Court stated:

"If he [i. e. the master] did lend or sell any part of the boat without permission from the owner it was a conversion of the property, and equally a conversion in the defendant who, with a full knowledge of all the facts, hired the anchor of one who had no authority to make such a contract." (p. 110.)

In United Shoe Machinery Co. v. Holt, 185 Mass. 97, 69 N.E. 1056, the Court stated:

"In an action of trover the seller and the purchaser can be jointly held liable (p. 1057)".

In Smith v. Briggs, 64 Wis. 497, 25 N.W. 558, one Briggs wrongfully entered on plaintiff's lands, cut a large quantity of timber and sold it to one Sherry. The Court held that both Briggs and Sherry were liable for damages in conversion as joint tort feasors.

In Kilmer v. Hutton, 131 App.Div. 625, 116 N.Y.S. 127, 136, (1st Dept.) the Court wrote as follows:

"When property has been converted by one person and afterwards delivered to another, trover may be maintained against the latter as well as against him who originally converted it."

That case involved a wrongful delivery of stock certificates to persons not entitled to receive them.

■ It would be a work of supererogation to multiply authorities for this proposition of law, which is almost elementary. It is clear, therefore, that on the undisputed facts, the defendants are liable to the plaintiff for damages on the theory of conversion. The mere fact that the defendants received copies of the documents from the trespassers who purloined the originals, instead of the originals themselves, is, of course, immaterial. What the measure of damages should be and whether substantial damages may be recovered under the circumstances, is a matter to be determined at a later stage of this litigation.

Plaintiff's counsel advance an additional alternative theory on which they seek to predicate the plaintiff's right to recover, namely, violation of the right of privacy. The right of privacy has been developed and has gradually gained recognition in the law of torts since the turn of the century. This Court in Peay v. Curtis Pub. Co., D.C., 78 F.Supp. 305, held that it formed a part of the law of the District of Columbia. This view has been approved by the Court of Appeals for the District of Columbia, citing the Peay decision among others

with approval, Afro-American Publishing Co. v. Jaffe, 125 U.S.App.D.C. 70, 74, 366 F.2d 649, 653.

■ As this Court stated in the *Peay* case, the right of privacy has been broadly described as "the right to be let alone" (p. 307). The publication of a photograph of a private individual without his sanction, or depicting events in his personal life that are of no public interest, are illustrative violations of the right of privacy. It is a right to keep the noiseless tenor of one's way along the cool sequestered vale of life without intrusion on the part of the public. There are those who shun publicity and who deplore and even resent any attempt to cast a public gaze on any aspect of their personal life. The law respects this attitude and lends sanction to it by way of an action for damages for its infringement. There are, however, important limitations on the right of privacy. It does not extend to matters of public interest, or to persons properly in the public eye, at least as to matters other than features of their intimate life, Bernstein v. National Broadcasting Co., 129 F.Eupp. 817, 828, affirmed 98 U.S.App.D.C. 112, 232 F.2d 369.

The Restatement of the Law of Torts recognizes the right of privacy. It defines it as follows (§ 867):

"A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other."

The Restatement likewise formulates the exception to this right, which has already been discussed. It states (§ 867):

"*Conflict of interests*. The rule stated in this Section gives protection to the interest which a person has in living with some privacy, but this protection is relative to the customs of the time and place and to the habits and occupation of the plaintiff. * * if he submits himself or his work for public approval, as does a candidate for public office, a public official, an

actor, an author or a stunt aviator, he must necessarily pay the price of even unwelcome publicity through reports upon his private life and photographic reproductions of himself and his family, unless these are defamatory or exceed the bounds of fair comment."

An illuminating discussion of the law of privacy and its limitations is found in Prosser on Torts, 635, 638, 642.

■ The Court concludes that the publication of the material of which the plaintiff complains is not protected by the cloak of the right of privacy, because the publications relate to his activities as a high-ranking public officer, namely, Senator of the United States, in which the public has an interest.

It follows hence that the plaintiff is entitled to recover damages in this case, but only on the theory of a conversion and not on the theory of a violation of a right of privacy. The distinction is not purely theoretical, as a more liberal, flexible and broad measure of damages may perhaps be applicable to actions for invasion of privacy, than govern actions for conversion.

■ The Court will, therefore, render partial summary judgment adjudicating that the plaintiff has a right to recover damages solely on the theory of conversion of his property. The measure of damages is an important subject that will have to be determined at the trial. Ordinarily, damages for conversion of personal property are the value of the property. In this instance the property consists of documents. Naturally, their value is not confined to the cost of the paper on which they are written. Documents may have intrinsic monetary value as, for instance, a manuscript being prepared for publication. If by improperly obtaining the manuscript and making it public the defendant destroys its salable value, the plaintiff is entitled to recover the value of the manuscript. In this instance, apparently the plaintiff seeks to recover damages for injury to reputation, personal embar-

**106**

rassment and mental anguish. Whether recovery of such damages may be had in an action for conversion and, in fact, whether on the facts of this case the plaintiff may recover substantial damages at all, must be left for determination at the trial.

Counsel may submit an order in accordance with the foregoing ruling.