RALPH NADER, Respondent, *v.* GENERAL MOTORS CORPORATION, Appellant, et al., Defendants.

First Department, March 13, 1969.

*Martin Kleinbard* of counsel (*Allan A. Tuttle* with him on the brief; *Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison*, attorneys), for appellant.

*Alfred W. Gans* of counsel (*Stuart M. Speiser* and *Paul D. Rheingold* with him on the brief; *Speiser Shumate Geoghan Krause & Rheingold*, attorneys), for respondent.

McGIVERN, J. The plaintiff, an author and a lecturer on automotive safety, by his activities has become a gadfly to the automobile manufacturers. The defendant General Motors, learning of the imminent publication of his book, " Unsafe At Any Speed ", authorized other defendants to undertake a thorough unveiling of him. The scrutiny and the surveillance of the plaintiff, carried on by the defendants' operatives, were characterized by such uninhibited gusto that the culmination was an

apology tendered him before a Senatorial Investigating Committee. This, however apparently was not sufficient to assuage the plaintiff or his honor. He has brought suit for invasion of his right of privacy, for the intentional infliction of mental suffering and for the tortious interference with his prospective economic advantages.

Defendant General Motors moved to dismiss the first and second causes of action predicated upon an invasion of plaintiff's common-law right of privacy as also plaintiff's fourth cause of action predicated upon interference with economic advantages for legal insufficiency. Special Term has denied relief and permitted these causes of action to stand. With this disposition we agree, albeit not for precisely the same reasons.

Treating these causes in seriatim, we uphold the first cause of action. Although it may be true that until the present there does not seem to be any District of Columbia precedent permiting a cause of action for invasion of the right of privacy, aside from the making public of facts pertaining to a subject's private life, the absence of an exact precedent is no bar to the relief. That the right of privacy forms a part of the law of the District of Columbia, and that an action for its invasion is maintainable there, there can be no doubt. (See *Dodd* v. *Pearson,* 279 F. Supp. 101 [1968]; *Afro-Amer. Pub. Co.* v. *Jaffe,* 366 F. 2d 649 [1966]; *Peay* v. *Curtis Pub. Co.,* 78 F. Supp. 305 [1948]; also the early case *Bernstein* v. *National Broadcasting Co.,* 129 F. Supp. 817 [U. S. Dist. Ct., D. C., 1955], affd. 232 F. 2d 369 [1956], cert. den. 352 U. S. 945.) Special Term was apt when it said (57 Misc 2d 301, 304): "recent cases from the District of Columbia, cited by plaintiff, appear to make explicit reference to the right to be free from intrusion into one's private life as a facet of the general right of privacy". And from these precedents it may also be elicited that the complaint before us is maintainable, involving as it does an aspect of plaintiff's general right of privacy. In any event, we cannot say the door is closed. In so holding we are not creating a "new right of recovery" or "extensions of tort liability into unexplored areas", as the minority apprehends. We are but recognizing what has gone before. As was said in *Santiesteban* v. *Goodyear Tire & Rubber Co.* (306 F. 2d 9, 11 [C. A. 5th, 1962]): "However, these Florida authorities demonstrate that the right of privacy is recognized in Florida *as it is in an overwhelming number of jurisdictions in this country.*" (Emphasis supplied.) Nor are the difficulties of ascertaining what courts may do sufficient grounds for declining to exercise jurisdiction of a case otherwise properly brought. (*Meredith* v. *Winter Haven,* 320 U. S. 228, 234.)

The activities complained of: the shadowing, the indiscriminate interviewing of third persons about features of his intimate life, the wiretapping and eavesdropping, the prying into his bank accounts, taxes, the alleged accosting by young women and the receipt of threatening phone calls, all are within the purview of these cases (*supra*). As the United States Court of Appeals for the District of Columbia said in the *Afro-Amer.* case (pp. 653–654): "A common law action for invasion of privacy is maintainable in the District of Columbia * * * It represents a vindication of the right of private personality and emotional security, the essence of the interest protected being aptly summarized in Judge Cooley's perceptive phrase, ' the right to be left alone ' * * * Different patterns of interference are reflected in the cases, and a variety of subdoctrines [of the right of privacy] have evolved." Thus, these courts in the District of Columbia have never categorically held that unauthorized publications of private facts alone will give rise to a right of privacy action. Rather, they are replete with repetitious indorsements of the Restatement, Torts (§ 867) and Prosser, Torts (2d ed., pp. 635, 638, 642) indicating an ever burgeoning approach to this field of the law. Indeed, in view of the broad and sweeping language of these cases, we can do no other but hold that the District of Columbia cases not only give welcome to a classical common-law action for invasion of privacy but also to the " sub-doctrines " of intrusion into one's seclusion or solitude as an actionable tort. And since we are not dealing with the laws of the Medes and the Persians, the lack of an exact precedent is no reason for turning the plaintiff out of court when receiving his action will further the bringing of the law into harmony with the known practices of our modern society.

It is to be noted that the latest draft of the Restatement (Tentative Draft No. 13), Torts (§ 652B) (April 27, 1967) agrees with this view:

" § 652B. INTRUSION UPON SECLUSION. One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man." Particularly is this so, when the defendant General Motors has already conceded wrongdoing. " A rule which so incongruously shields conceded wrongdoing bears a heavy burden of justification." (*Badigian* v. *Badigian,* 9 N Y 2d 472, 475, FULD, J., dissenting.)

Considering the second cause of action, relevant to New York activities of General Motors and the presence in New York of

the defendant Gillen, his associates, and Fidelifacts, we likewise conclude it to be maintainable. It is substantially the same as the first cause of action, except for the excision of the charges pertaining to the use of girls for enticement into illicit relationships and the making of threatening telephone calls, contained respectively in subdivisions (d) and (e) of paragraph 9. And since in their respective briefs in this court defendant concedes and plaintiff acquiesces in the applicability of the District of Columbia Law to the second cause of action, and since counsel for General Motors has reaffirmed this concession in oral argument, we similarly uphold the second cause of action. Judged by District law, untrammeled by the New York Civil Rights statute, which would preclude the action, we must accept the second cause of action. In any event, District law should apply. (*Babcock* v. *Jackson,* 12 N Y 2d 473; *Bernstein* v. *National Broadcasting Co.,* 129 F. Supp. 817, affd. 232 F. 2d 369, cert. den. 352 U. S. 945, *supra.*) In the latter case after reviewing possible choices of forum the District Court said (p. 825): '' The tort of invasion of privacy being a personal injury, the question whether plaintiff has a cause of action on the facts stated by him should be determined by the law of the jurisdiction where he sustained the injury, or, as expressed in § 377 of the Restatement, Conflict of Laws (1934), ' the state where the last event necessary to make an actor liable for an alleged tort takes place.' The injury in these cases is the humiliation and outrage to plaintiff's feelings, resulting from the telecast. The last event necessary to make the defendant liable was not the final act in publication of the telecast, as plaintiff argues, but the reaction of the telecast on his own sensibilities.''

The plaintiff herein was a District resident, the principal obtrusions and impact of the activities occurred there, and all '' the grouping of contacts '' relate to the District. Thus, there is no need of passing on the constitutional ground assigned by the court at Special Term for sustaining the second cause of action. In any event, if there is any serious question as to the proper choice of law, which there is not in this case, such choice would be a matter '' to be determined by the court upon the trial proof and before submitting the basic issues framed by the pleadings to the jury '' as a question of law, not the subject of summary disposition here sought by way of a motion to dismiss for alleged insufficiency. (*Anderson* v. *A/S Berge Sigval Bergesen,* 29 A D 2d 756, 757, affd. 22 N Y 2d 944.)

Finally, turning to the fourth cause of action, founded on a deprivation of sales, we also affirm Special Term and sustain the cause. The special damages pleaded may be lean and spare,

but they are identifiable. The objections raised are premature and are subject to proof at trial. Furthermore, following completion of disclosure proceedings, the stipulation between the parties permitted the serving of a supplemental bill of particulars.

Thus, we would affirm the action of Special Term and deny the motion to dismiss.

STEUER, J. (dissenting). One of the three defendants moves to dismiss three of the four causes of action pleaded in the complaint. Movant concedes the validity of the third cause of action. For purposes of discussion the first three causes of action can be considered together. The fourth requires separate treatment.

In the first cause of action plaintiff describes himself as a writer and lecturer on automotive safety. He alleges that he has written a book on the subject which is critical of the safety of American automobiles, including those manufactured by the moving defendant. Having learned of the imminent publication of this book, movant embarked upon a campaign of intimidating, maligning and injuring plaintiff to suppress plaintiff's criticism and prevent his disclosing it. The defendants other than the movant were hired by it to accomplish this.

It is then alleged that the defendants violated plaintiff's right of privacy, subjected him to intimidation and harassment and invaded his seclusion, solitude and private affairs by interviewing various persons who knew plaintiff and questioning them concerning plaintiff's views, integrity and his personal and sexual life, and casting aspersions thereon; by surveillance in public places for an unreasonable time; by having him accosted by girls for purposes of entrapment; by making threatening telephone calls to plaintiff; by eavesdropping by means of electronic equipment; and by conducting a continuous investigation of plaintiff. These acts are alleged to have occurred in a number of jurisdictions, not including New York.

The second cause of action is for the same kind of conduct but limited to those acts which took place in New York.

The third cause of action alleges the same matters plus the allegation that plaintiff was unaware of the source of these activities, that he was put in fear of their extension to violence, and that he thereby suffered severe emotional distress. It is this cause of action which is not challenged.

The only distinction between the first and second causes of action is that in the second cause of action the acts complained of took place in New York and in the first they took place elsewhere. No new form of harassment or invasion is involved.

Each cause of action seeks $5,000,000 in damages, and it is conceded that it is the same $5,000,000, that is, that the damages resulted from the totality of the acts. The form of pleading was adopted to meet possible conflict of laws questions arising from differing views of what is actionable conduct in different jurisdictions. All of these questions have been obviated by the concessions of defendant. The law of the place having the most significant relationship governs torts having some situs in various jurisdictions (*Babcock* v. *Jackson,* 12 N Y 2d 473). Concededly that jurisdiction in this case is the District of Columbia. Consequently the second cause of action becomes merely repetitive of the first and the two can be regarded as one.

It is to be observed that the gravamen of plaintiff's first and second causes of action is the violation of his right of privacy. The specific acts, either individual or in their totality, are not claimed to be actionable except insofar as they constitute such an invasion. It would follow that a failure of proof as to any or all but one of the acts would not defeat plaintiff's suit as long as that one interfered with plaintiff's privacy. As a consequence, the existence of the right as an actionable claim is directly in issue.

To form any sort of advised opinion, some history of the " right of privacy " is needed. Prior to 1890, if the phrase was used at all it represented, at least logically, an amorphous concept somewhat in the nature of " the pursuit of happiness ", something to which we had a right; but reducing that right to enforcible proportions was not even imagined. In that year an article appeared in the Harvard Law Review (4 Harv. L. Rev. 193) written by Louis D. Brandeis and Samuel D. Warren on the subject.[1] The article had an impact on legal development such as few of its kind ever had either before or since. In short, the article analyzed several English decisions which either allowed or denied recovery where there had been an unauthorized use of the plaintiff's name, portrait or other personal matter. It concluded that such use was not, as generally asserted, the violation of a property right but of a personal right, with consequences attendant upon the distinction. This personal right was styled the right of privacy.

In the course of time several actions to recover for unauthorized publications based on the theory of the article were instituted in many different jurisdictions. The reception accorded

1. A description of the genesis of the article appears in Prosser, Privacy (48 Cal. L. Rev. 383) and is of great interest not only legally but as a commentary on Boston manners of its day and today.

them varied in the different courts. Perhaps the earliest was in this State, in 1895 *(Schuyler* v. *Curtis,* 147 N. Y. 434). While the report does not establish that the article was cited to the court, the phrase " right of privacy " was used. The court took occasion to state that whether there was such a right or not was not passed upon because in the instant action the right, if any, was not violated, and even if it were it was not the plaintiff's privacy that suffered. Both the article and the question presented by it were squarely presented to the court seven years later *(Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538). The court flatly rejected the idea of a right of privacy as an actionable right the invasion of which gave grounds for recovery, and it stated that the introduction of hitherto unrecognized actions was the prerogative of the Legislature rather than the courts. In due course the Legislature promptly responded (1903) by the enactment of what is now section 50 of the Civil Rights Law which gives a right of action for unauthorized publications in situations which accord with its provisions.

Experience in many jurisdictions has been very similar. In some, among which is the District of Columbia, the preliminary stage of rejection subject to statutory enactment has been elided and the courts have provided for recovery as a matter of common law. (In the District of Columbia, *Afro-Amer. Pub. Co.* v. *Jaffe,* 366 F. 2d 649.) Such has been the development of the right of privacy as a matter of law — that is, statute or decision.

That it has not so rested as a matter for discussion even to the extent of including such discussion in opinions, is quite true. The concept so engendered stems from a remark by Judge Cooley in his work on torts: " The right to one's person may be said to be a right of complete immunity: to be let alone." (Cooley, Torts, 2d ed., p. 29.) Clearly this refers to an immunity to the person — a right not to be assaulted or to have indignities put upon one's person. And so the Supreme Court of the United States construed it and gave it effect *(Union Pacific Ry. Co.* v. *Botsford,* 141 U. S. 250, 251).[2] In editions subsequent to the death of Judge Cooley, his observation has been garbled to read " the right to be let alone " (see 4th ed., p. 442) and the author's great reputation has led other writers to believe that there was some general actionable tort based upon other types of privacy invasion. Completely overlooked is the explanation of the phrase " the right to be let alone ", given in the same

2. Ironically, the holding in the case, that a court could not require a plaintiff in a personal injury action to submit to a physical examination, has been completely inundated and swept away by the tide of liberalized procedure.

edition in which the shortened phrase appears: "The right of privacy, conceding it to exist, is a purely personal one, that is, it is a right of each individual to be let alone, or not to be dragged into publicity." (Cooley, *op. cit.* 449.) Dean Prosser, who is among those who recognize "the right to be let alone" as possibly something more than either a right of inviolability of the person or not to be dragged into publicity (the limits in which the coiner of the phrase used it) has canvassed the fields for cases which support such an extended view. All of the cases cited (Prosser, *op. cit.*) rest either on a local statute or on some other recognized tort (trespass, defamation, or the like).

As far as decision goes, the District of Columbia is no exception to the above. Concededly, all decisions there where recovery has been allowed for invasion of privacy have been publication cases. Plaintiff concedes this, but relies on expressions particularly approving of the Cooley maxim (see *Dodd* v. *Pearson,* 279 F. Supp. 101, 105). While it is always a sensitive proposition to declare the law of a jurisdiction the courts of which have never had occasion to deal with the precise question, we cannot but believe that the courts of the District of Columbia follow the practice of all common-law courts, and decide only the case that is before them. "If, as sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance." (*Colonial City Traction Co.* v. *Kingston City R.R. Co.,* 154 N. Y. 493, 495.)

Furthermore, the practice of giving claims new names for the purpose of avoiding restrictions on the established forms is impermissible (*Morrison* v. *National Broadcasting Co.,* 19 N Y 2d 453). And this has been attempted, unsuccessfully, by labelling the action an invasion of privacy (*Gautier* v. *Pro-Football,* 304 N. Y. 354; see Hofstadter and Horowitz, Right of Privacy, p. 6). When the new name is also designed to create new rights of recovery, the utmost circumspection should be employed. Decision should not rest on the individual reaction of the judge or bench in question. "The importance of observing the spirit of this rule cannot be overestimated, for, while justice in a given case may be worked out by a decision of the court according to the notions of right which govern the individual judge or body of judges comprising the court, the mischief which will finally result may be almost incalculable under our system which makes a deci-

sion in one case a precedent for decisions in all future cases which are akin to it in the essential facts." (*Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538, 546–547, *supra.*) Similar caveats that extensions of tort liability into unexplored areas should be left to the Legislature, which can effectively limit the boundaries, are still issued and have a prominent place in our judicial philosophy. " To foist a presumed cure for these problems by judicial innovation of a new kind of liability in tort would be foolhardy indeed and an assumption of judicial wisdom and power not possessed by the courts." (BREITEL, J. in *Riss* v. *City of New York,* 22 N Y 2d 579, 582.)

It would be hard to conceive of any field in the law where the recognition of a new ground of recovery could do greater mischief. Is it to be understood that an undefined phrase such as " to be let alone " can furnish any guide to actionable rights? The most mortifying instances of privacy invasion are occasioned by domestic accidents. Is the test to be the effect on the sensibilities of the plaintiff, or the turpitude of the defendant? In a field where individual predilection for privacy can vary from the morbid seclusion of the hermit to the extroverted conduct of the publicity seeker, is the right to be let alone to depend on the particular reaction of the individual judge to the practically limitless number of ways in which privacy can be invaded? These questions are to such a degree rhetorical that it is not contemplated that the District of Columbia courts will find any answers different from the quoted guides to decision.

Lastly, we come to the fourth cause of action, which seeks recovery for loss of business opportunities. A cause of action for such relief requires a specification of the damage suffered (*Morrison* v. *National Broadcasting Co.,* 19 N Y 2d 453, *supra*). It is not enough to allege generally loss of sales of plaintiff's writings. The writings and the potential sales lost must be set out. The bill of particulars makes no attempt to supply these deficiencies. What it does give, some expenses in compiling material, are not recoverable.

The order entered July 3, 1968, should be reversed and the motion to dismiss the first, second and fourth causes of action granted, with leave to plaintiff to apply at Special Term for leave to replead the fourth cause of action.

CAPOZZOLI and NUNEZ, JJ., concur with McGIVERN, J.; STEUER, J., dissents in opinion in which EAGER, J. P., concurs.

Order entered on July 3, 1968 affirmed with $50 costs and disbursements to respondent.