■ ALEXANDER SACKS, Appellant, v RICHARD E. STEWART et al., Respondents.—"Motion to resettle order" entered December 27, 1979 and separate "request that the court take judicial notice" are consolidated into one motion, regarded as one for reargument. It is granted without costs to the extent only of recalling our earlier memorandum decision (73 AD2d 586) and of vacating the order entered thereon, substituting therefor the follow-

ing memorandum and an order in conformity therewith. Order, Supreme Court, Bronx County, affirmed, without costs. Our earlier disposition affirmed Special Term's dismissal of the complaint as time barred in that "the action was commenced on November 16, 1973, [date of complaint] more than three years after accrual, by what is claimed to have been an unlawful discharge which occurred September 4, 1970." Plaintiff-appellant now requests us to take judicial notice of certain Sheriffs' records which would establish that the action was actually commenced earlier and timely by delivery to those officials of summonses for defendants, consequently served by the Sheriffs on them (CPLR 203, subd [b], par 5, cl [i]). That earlier date was, however, never called to the attention either of Special Term or this court; it is not mentioned in the brief but appears only in the CPLR 5531 statement, not part of either record or brief, and filed "together with the record on appeal." The propounded documents were not in the County Clerk's file and, in any event, never came to our attention until this motion was made. We are without authority to go beyond a submitted record save in limited instances, none of which pertains here. Any addition to the record should properly have been accomplished at Special Term before we ever received the case. Nor is our determination to deny the application based merely on what might arguably be a technical detail, for we find no merit in the appeal whatever. Considering the case in greater depth than when it seemed obvious that a three-year statute had run against plaintiff's complaint of "certain alleged harassments and related acts to force plaintiff out of his employment in one of the State's departments" [quoting our earlier decision], we find that indeed the three-year statute had run. Every claimed tortious act of harassment, etc., save one, had been completed within the three-year period before commencement of the action, when calculated as plaintiff has done. That one act, his discharge, was, however, neither tortious by itself nor the culmination of an allegedly tortious conspiracy. The act of discharge did not constitute a tort: plaintiff held a position exempt from civil service, subject to discharge at will and, there having been no stigmatization because of absence of publication, not entitled to a hearing. "The allegation of a civil conspiracy, without more, does not in and of itself give rise to a cause of action." *(Cuker Inds. v Crow Constr. Co.,* 6 AD2d 415, 417.) Merely to characterize the discharge in the complaint as having been done "maliciously" without supporting facts does not make it into a tort. The discharge then was not in itself an actionable tort but no more than an element of damage referable to the early alleged separate torts, all since outlawed by the three-year limitation. It was not a new, additional tort linked, chainlike, to the earlier ones. Further, there is authority for application here, as did Special Term, of a one-year Statute of Limitations. Our earlier dispositive memorandum decision stated that "Special Term characterizes the pleaded cause as defamation, which it is not, no publication being apparent." Certainly, it is not defamation in the ordinary sense, and not actionable precisely as such, but, "in applying the Statute of Limitations we look for the reality, and the essence of the action and not its mere name." *(Brick v Cohn-Hall-Marx Co.,* 276 NY 259, 264.) The reality and essence of this case add up, in effect, to a complaint of a species of defamation without publication. We find a parallel to the instant case in *Morrison v National Broadcasting Co.* (19 NY2d 453) with the same type of damage alleged. The complaint here recites plaintiff's damages: deprivation of employment, denial of professional advancement, mental distress, etc.; Professor Morrison claimed to have been denied a fellowship as the result of actions by defendants in his case. "We do not find it necessary to decide

whether the defendants' conduct was actionable. Even if we were to assume that the plaintiff could have stated a valid cause of action against them, the complaint before us would, nevertheless, have to be dismissed. In the first place, it fails to allege special damages with sufficient particularity, the plaintiff's speculations concerning the reasons for his failure to obtain a fellowship being simply not adequate for the purpose. (Cf. *Rager v. McCloskey,* 305 N.Y. 75, 81; *Nichols v. Item Publishers,* 309 N.Y. 596, 602.) While it might be possible to cure this deficiency by amendment of the complaint (see *Gurtler v. Union Parts Mfg. Co.,* 1 N Y 2d 5, 8; *Kelly v. Overseas Investors,* 18 N Y 2d 622, 624), another and insuperable obstacle to maintenance of the action is presented by the bar of the controlling Statute of Limitations. The harm assertedly sustained by the plaintiff—injury to his reputation—is precisely the same as that caused by defamation; indeed, in describing the plaintiff's cause of action for an 'intentional wrong', the Appellate Division acknowledged that, although 'the causative acts are different from those in defamation, * * * the effect, that is, harm to reputation, is the same.' It is here that we find error in the Appellate Division's determination. The broad reach of the common-law cause of action for defamation is indicated in the Restatement of Torts. 'A communication is defamatory', its authors have written (§ 559), 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' Thus, unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished. This is borne out by Comment *a* to section 559, where it is noted that 'The word "communication" is used to denote the fact that one person has brought an idea to the perception of another.' In the case before us, the plaintiff complains, in effect, that the defendants' conduct 'brought an idea' that he was dishonest 'to the perception' of the general public. It follows, therefore, that his cause of action must be deemed to fall within the ambit of tortious injury which sounds in defamation." *(Morrison v National Broadcasting Co., supra,* pp 458-459; also see *Nader v General Motors Corp.,* 31 AD2d 392; *Noll v Interboro Mut. Ind. Ins. Co.,* 31 AD2d 54.) The parallel dictates the same course here: application of the one-year statute. Thus, even had we authority at this juncture to accept the earlier date tendered by plaintiff-appellant, the result must be the same, and our earlier affirmance adhered to. Concur—Ross, J. P., Markewich, Lupiano and Silverman, JJ.